**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| **COALITION TO MARCH ON THE RNC,** | |
| Plaintiff, | |
| **v.** | Civil Action No:_____ |
| **CITY OF MILWAUKEE, CAVALIER JOHNSON in his official capacity as Mayor of the City of Milwaukee, and JERREL KRUSCHKE in his official capacity as Commissioner of Public Works for the City of Milwaukee,** | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

INTRODUCTION                                                                    1

STATEMENT OF FACTS                                                             2

STANDARD OF REVIEW                                                             7

ARGUMENT                                                                       8

I.    THE COALITION IS LIKELY TO PREVAIL ON THE MERITS.                        9

      A.    The City's Broad Restrictions on First Amendment Activity Are
            Unconstitutional Because They Are Not Narrowly Tailored and Provide
            Insufficient Alternatives for Protected Expression.                9

            1.    The Ordinance bans a vast amount of protected speech across an
                  arbitrarily large area, and is not narrowly tailored.       11

            2.    Reference to a secret future parade route does not provide an
                  ample alternative channel to unrestrictive speech.          14

            3.    The park space designated by the City is not a sufficient alternative
                  channel for expression.                                     17

      B.    The City's Delay in Granting Permits is an Unconstitutional Prior
            Restraint and This Court Should Enjoin the City to Release Dispositions
            of Permits Immediately.                                           18

      C.    The City's Delay and Constructive Denial of the Coalition's Permit
            Applications is an Unconstitutional Prior Restraint on Free Speech in
            Violation of the First Amendment.                                 18

            1.    The City has vested itself with unfettered discretion to control free
                  speech.                                                     18

            2.    Plaintiff is entitled to time for appeal and to obtain judicial review
                  of the City's decision on its permit application, and that time is
                  evaporating.                                                20

      D.    The Special Event Ordinance Allows the Commissioner to Engage in
            Arbitrary and Discriminatory Enforcement in Violation of the Due Process
            Clause.                                                           22

II.   TRADITIONAL LEGAL REMEDIES ARE INADEQUATE.                              23

III.  THE COALITION WILL EXPERIENCE IRREPARABLE HARM IF A PRELIMINARY INJUNCTION IS
      NOT GRANTED.                                                            23

IV.     THE BALANCE OF POTENTIAL HARM FAVORS GRANTING THE REQUESTED PRELIMINARY INJUNCTION.                                                24

V.      IT IS IN THE PUBLIC INTEREST TO GRANT THE COALITION'S REQUEST FOR A PRELIMINARY INJUNCTION                                          25

CONCLUSION                                                                                                                                 26

Page(s)

**Cases**

*11126 Baltimore Boulevard, Inc. v. Prince George's Ct., Md.*
  58 F.3d 988 (4th Cir. 1995) (en banc) .......................... 19

*ACLU v. Alvarez,*
  679 F.3d 583 (7th Cir. 2012) .......................... 23, 25

*Am. Target Advert., Inc. v. Giani,*
  199 F.3d 1241 (10th Cir. 2000) .......................... 19

*Bantam Books, Inc. v. Sullivan*,
  372 U.S. 58 (1963) .......................... 9

*United States v. Baugh*,
  187 F.3d 1037 (9th Cir. 1999) .......................... 16

*Bay Area Peace Navy v. U.S.*,
  914 F.2d 1224 (9th Cir. 1990) .......................... 15, 16

*Bence v. Breier*,
  501 F.2d 1185 (7th Cir. 1974) .......................... 22

*Bl(a)ck Tea Soc'y v. City of Boston*,
  378 F.3d 8 (1st Cir. 2004) .......................... 16, 21

*Brown v. Kemp*,
  86 F.4th 745 ( 7th Cir. 2023) .......................... 23

*Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*,
  458 F. Supp. 3d 1044 (E.D. Wis. 2020) .......................... 24

*Candy Lab Inc. v. Milwaukee Cty.*,
  266 F. Supp. 3d 1139 (E.D. Wisconsin 2017) .......................... 20

*Cassell v. Snyders*,
  458 F. Supp. 3d 981 (N.D. Ill. 2020), *aff'd*, 990 F.3d 539 (7th Cir. 2021) .......................... 7

*Christian Legal Soc'y v. Walker*,
  453 F.3d 853 (7th Cir. 2006) .......................... 24

*City of Chicago v. Morales*,
  527 U.S. 41 (1999) .......................... 22

*City of Lakewood v. Plain Dealer Pub. Co.*,
  486 U.S. 750 (1988)                                              18, 20

*City of Watseka v. Illinois Pub. Action Council*,
  796 F.2d 1547 (7th Cir. 1986), *aff'd*, 479 U.S. 1048 (1987)        10

*Collin v. Chicago Park Dist.*,
  460 F.2d 746 (7th Cir. 1972)                                        9

*Cutting v. City of Portland, Maine*,
  802 F.3d 79 (1st Cir. 2015)                                        12

*D.U. v. Rhoades*,
  825 F.3d 331 (7th Cir. 2016)                                        7

*Elrod v. Burns*,
  427 U.S. 347 (1974)                                                24

*Forsyth County v. Nationalist Movement*,
  505 U.S. 123 (1992)                                              9, 18

*Frisby v. Schultz*,
  487 U.S. 474 (1988)                                                10

*FW/PBS, Inc. v. City of Dallas*,
  493 U.S. 215 (1990)                                                 9

*GEFT Outdoor, LLC v. Monroe Cnty., Indiana*,
  62 F.4th 321 (7th Cir.), *cert. denied sub nom. GEFT Outdoor, L.L.C. v.
  Monroe Cnty., Indiana*, 144 S. Ct. 96, 217 L. Ed. 2d 24 (2023)      9

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*,
  549 F.3d 1079 (7th Cir. 2008)                                      23

*Grossbaum v. Indianapolis-Marion Cnty. Bldg. Auth.*,
  100 F.3d 1287 (7th Cir. 1996)                                      10

*Hodgkins ex rel. Hodgkins v. Peterson*,
  355 F.3d 1048 (7th Cir. 2004)                                      14

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. Of Boston*,
  515 U.S. 557 (1995)                                                15

*Hynes v. Mayor & Council of Borough of Oradell*,
  425 U.S. 610 (1976)                                                22

*Ill. Republican Party v. Pritzker*,
  973 F.3d 760 (7th Cir. 2020)                                        7

*Ind. Civ. Liberties. Union Found., Inc. v. Superintendent, Ind. State Police*,
    470 F. Supp. 3d 888 (S.D. Ind. 2020)                       25, 26

*Joelner v. Village of Washington Park*,
    378 F.3d 613 (7th Cir. 2004)                       7, 24

*Johnson v. United States*,
    576 U.S. 591 (2015)                       22

*Knowles v. City of Waco, Tex.*,
    462 F.3d 430 (5th Cir. 2006)                       12, 13

*Kuba v. 1-A Agr. Ass'n*,
    387 F.3d 850 (9th Cir. 2004)                       16

*Mahoney v. Babbitt*,
    105 F.3d 1452 (D.C. Cir. 1997)                     14

*Mays v. Dart*,
    974 F.3d 810 (7th Cir. 2020)                       7, 24

*McCullen v. Coakley*,
    573 U.S. 464 (2014)                       10

*Nebraska Press Ass'n v. Stuart*,
    427 U.S. 539 (1976)                       9

*of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty., Tennessee*,
    274 F.3d 377 (6th Cir. 2001)                       20

*United States v. Playboy Entm't Group, Inc.*,
    529 U.S. 803 (2000)                       8

*Polaris Amphitheater Concerts, Inc. v. City of Westerville*,
    267 F.3d 503 (6th Cir. 2008)                       19

*Reynolds v. Middleton*,
    779 F.3d 222 (4th Cir. 2015)                       12

*Saieg v. City of Dearborn*,
    641 F.3d 727 (6th Cir. 2011)                       12

*Se. Promotions, Ltd. v. Conrad*,
    420 U.S. 546 (1975)                       9

*Seattle Affiliate of Oct. 22nd Coalition to Stop Police Brutality, Repression and Criminalization of a Generation v. City of Seattle*,
    550 F.3d 788 (9th Cir. 2008)                       13, 14

*Serv. Employee Int'l Union v. City of Los Angeles*,
114 F. Supp. 2d 966 (C.D. Cal. 2000) .......... 15

*Service Employees Intern. Union, Local 5 v. City of Houston*,
595 F.3d 588 (5th Cir. 2010) .......... 17

*Smith v. Exec. Dir. of Ind. War Mem'ols Comm'n*,
742 F.3d 282 (7th Cir. 2014) .......... 25

*Speech First, Inc. v. Killeen*,
968 F.3d 628 (7th Cir. 2020) .......... 7, 8, 12, 15

*Stokes v. City of Madison*,
930 F.2d 1163 (7th Cir. 1991) .......... 9

*Stonewall Union v. City of Columbus*,
931 F.2d 1130 (6th Cir. 1991) .......... 20

*The Coal. to Mar. on the RNC & Stop the War v. The City of St. Paul, Minn.*,
557 F. Supp. 2d 1014 (D. Minn. 2008) .......... 15

*United for Peace & Justice v. City of New York*,
323 F.3d 175 (2d Cir. 2003) .......... 21

*Ward v. Rock Against Racism*,
491 U.S. 781 (1989) .......... 9

*Weinberg v. City of Chicago*,
310 F.3d 1029 (7th Cir. 2002) .......... 9, 10

*Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*,
858 F.3d 1034 (7th Cir. 2017) .......... 23

**Statutes**

Common Council. Event Ordinance § 6.b .......... 20

Event Ordinance .......... *passim*

**Other Authorities**

Milw. Ord. 105-55.5 .......... 4, 13

## INTRODUCTION

The Coalition to March on the RNC (the "Coalition") has provided the City of Milwaukee (the "City" or "Milwaukee") more than a year's notice that it plans to organize a protest parade outside of the Republican National Convention ("RNC" or "Convention"), set to begin on July 15, 2024. Now, less than six weeks before the Convention opens on July 15, the City is unwilling to reveal when and where it will permit the Coalition to exercise their First Amendment rights, either along the Coalition's proposed parade route, or in the alternative, a different parade route chosen by the City that serves as an adequate alternative channel.

The City passed "A substitute ordinance relating to the extraordinary event of the Republican National Convention" (the "Event Ordinance") that (1) creates a ninety-square block "Security Footprint" around Convention venues; (2) requires anyone seeking to demonstrate in a parade in that zone to apply for a special permit and march only on a designated "official parade route" limited to a seven-hour window each day; but (3) does not disclose where that parade route will be; and (4) threatens fines to anyone who   marches anywhere else.

The Event Ordinance also gives City officials unfettered discretion to designate this "official parade route" at any time before the Convention date up to the date of the actual Convention, which effectively prevents the Coalition or any other interested party from creating a meaningful plan to organize. Furthermore, the City has not responded to the Coalition's properly filed permit application seeking to have a parade during the Convention. Thus far, the City has left the Coalition completely in the dark as to whether the Coalition will even be able to participate in a parade route, and, if so, where such a route would be.

This ongoing delay in processing permit applications and disclosing the parade route deprives the Coalition of the right to seek meaningful judicial review of that decision, and

requires the Coalition to come now to this Court while there are still forty days before the start of the Convention.

The Coalition seeks injunctive relief requiring the City to amend the Event Ordinance by narrowing its extreme prohibitions on First Amendment activity during the RNC to what is constitutionally permitted. Namely, the Coalition requests this Court require the City to (1) issue a parade route within sight and sound of Fiserv Forum where much of the Convention's activities will take place; (2) eliminate all unjustified time, place and manner restrictions on First Amendment activities within the security footprint; and (3) take immediate action to process the permit applications submitted to the City for First Amendment activity during the Convention.

## STATEMENT OF FACTS

Beginning on July 15, 2024, the City of Milwaukee will host the 2024 Republican National Convention ("RNC" or the "Convention"). The nominating convention of one of our country's two major political parties presents a significant opportunity for individuals and organizations to participate in the democratic process through the exercise of their rights of free speech and assembly.

The RNC will host more than 2400 delegates, and will draw the party's major campaign contributors, lobbyists, and thousands of credentialed members of the media. In total, the City estimates 50,000 people will be arriving in Milwaukee for the Convention. It will thus provide an opportunity for groups and individuals to voice their opinions directly to the leaders and decision-makers of the Republican Party, to national and international media, and to people across the country and around the world who will watch the Convention coverage.

The Coalition is an unincorporated association of individuals from a broad range of organizations who have come together to hold a protest parade during the RNC.

As of the date of this complaint,    seventy-one different organizations, expressing a wide variety of concerns, have joined the Coalition. *See* Flores Decl. ¶ 3, Ex. 6 (listing subscribing organizations).

The Coalition plans to hold its protest parade at noon on Monday, July 15, 2024, the first day of the Convention. In addition to the parade, the Coalition intends to have an assembly with several speakers at a location within sight and sound of the RNC venues. [Flores Decl. ¶¶4,5]

Predecessor organizations to the Coalition have organized demonstration marches around national political conventions every presidential election year throughout the United States. Various Coalitions to March on Republican national conventions have organized protest parades in presidential national elections for the years 2008, 2012, and 2016.

In 2020, groups making up part of the current Coalition demonstrated in Milwaukee when the City was hosting the Democratic National Convention. They marched and demonstrated on the streets of Milwaukee under the name "Coalition to March on the DNC" on August 20, 2020. The event which was peaceful and resulted in no arrests or acts of violence. *See* Flores Decl. ¶ 6, Ex. 13.

On August 5, 2022, the national Republican party announced that it would hold its presidential nominating convention in Milwaukee during the week of July 15, 2024.

In all of its public statements and planning, the Coalition has stressed that its demonstration must be able to be seen and heard by persons attending the Convention. Those attendees, along with the persons seeing media coverage of the event, are the intended audience for the public protest which will be expressed in various ways by the forty-eight or more organizations and thousands of marchers who make up the Coalition. [Flores Decl. ¶8, Ex. 15].

On April 12, 2023 the Coalition filed an application for a parade permit pursuant to Milwaukee's general event ordinance, Milwaukee, Wis. Ord. 105-55.5, for a demonstration parade to take place on the first day of the RNC. The parade permit application filed by the Coalition proposed a route through several blocks of downtown Milwaukee, passing within sight and sound of Fiserv Forum where much of the convention activity will take place. *See* Flores Decl. ¶10, Ex. 1. The same day that the Coalition submitted its application, the City responded, effectively denying the permit on the ground that applications for special events may not be submitted more than six months in advance. The City did not respond to the substance of the April 12, 2023 application, including the Coalition's proposed parade route. [Flores Decl. ¶9, Exhs. 16, 17]

Approximately eleven months later, on March 19, 2024, the City of Milwaukee adopted the substitute Event Ordinance "relating to the extraordinary event of the Republican National Convention." (the "Event Ordinance"). The Event Ordinance establishes regulations and permitting requirements for the use of streets and public spaces in the City of Milwaukee solely for the week of the RNC. *See* Muth Decl. ⊪ 6, Ex. 2 (copy of Event Ordinance).

Despite the Event Ordinance's pro forma recognition of the rights enshrined in the First Amendment, its substantive measures regulate assembly and expression with great force. Within the "security footprint" as defined, the Event Ordinance grants "law enforcement and public works officials" the power to order people to leave the streets to enable "vehicular traffic associated with convention invitees and guests." Going further, the Event Ordinance proscribes all "other special events" inside the preliminary security footprint other than those permitted for the "official parade route" or "official speaker's platform." That is, within the expansive, ninety-block perimeter preliminarily established by the City in the heart of downtown—*not* the

zone that the Secret Service will ultimately establish for security purposes—no member of the public may demonstrate, except on the City's chosen route, or deliver remarks, except on the City's chosen stage. Further regulations restrict the vehicles that may travel within the security footprint, and while pedestrians are theoretically free to individually move about the area, they are barred from carrying certain items or entering an as-yet undefined "Credentialed Zone." Violation of *any* part of the Event Ordinance is subject to a fine of $500 and imprisonment until the fine is paid. Event Ordinance, §1.f.

The City's permitting for the still unidentified official speaker's platform and official parade route does little to alleviate the expansive regulations inside the preliminary security footprint. While the City has preliminarily indicated that the official speaker's platform will likely be in Pere Marquette Park, there is no place in the park from which Fiserv Forum is visible. *See* Flores Decl. ₱ 23, Ex. 5. The closest point to Fiserv Forum is the park's northwest corner shows and there is no line of sight from there to the arena. Likewise, no one standing in front of the arena in the area known as the "Deer District" can see or hear persons in Pere Marquette Park.

Despite the deficiencies of the speaker's platform likely location and the total absence of a designated parade route, the Republican Party sponsor of the Convention has already urged the City to take even more steps to prevent those who may be demonstrating, like the Coalition, from coming anywhere near the Convention attendees, *i.e.*, their intended audience. In a letter dated April 26, 2024, counsel for the Republican National Committee insisted that the director of the Secret Service expand the security footprint to move protesters farther away. *See* Muth Decl. ₱ 12, Ex. 4. Among other things, counsel wrote that current City proposals which might permit the speaker's platform in Pere Marquette Park within the soft zone were unacceptable, decrying that

attendees "who may otherwise choose to avoid or limit direct, proximate engagement with" demonstrators would increase the "risk of escalation to verbal, or even physical, clashes and corresponding law enforcement intervention." *Id.* That is, the GOP not only believes that law enforcement should intervene in "verbal . . . clashes" between politically active citizens with "differing ideologies" (the very core of the First Amendment's concern), but it also demands proactive measures to ensure, on threat of arrest, fine, and potential imprisonment, that people with differing views be physically barred from interacting. Because the City has yet to publish the "official" locations under the Event Ordinance, the Coalition does not know to what extent the City might cow to such extreme demands.

Nevertheless, on April 17, 2024, the Coalition continued its pursuit of its First Amendment rights, filing a new parade permit application for Monday, July 15, 2024 (the first day of the Convention) via the online portal created by the City of Milwaukee. *See* Flores Decl. ⁋ 14, Ex. 7. The same day, the Coalition emailed the Milwaukee City Attorney's office to note the absence of any official parade route and reserve its right to march a route within sight and sound of entrances to Convention venues. *See* Muth Decl. ⁋ 10, Ex. 11. The Coalition also objected to the manner for allocating time-limited slots on a single "official" platform and reserved the right to hold rallies inside or outside of the security footprint. *Id.*

The Coalition's application under the Event Ordinance still has not received approval despite the rapidly approaching Convention date. With no knowledge of the City's intended route or the disposition of its application, the Coalition organizers are left in limbo, potentially facing a crush of last-second logistical planning for thousands of demonstrators.

On May 30, 2024, counsel for the Coalition wrote to the Defendants to reiterate the Coalition's original proposed parade route and to identify further locations within sight and

sound of Fiserv Forum. *See* Muth Decl. ℙ 13, Ex. 12. The letter again insisted that the City act

promptly on approving the Coalition's application to march on its proposed route or a

substantially similar route. With time rapidly running out before the start of the RNC, and no end

in sight to the City's dilatory tactics, the Coalition has filed this suit to protect its First

Amendment rights of assembly and expression during the Convention.

## STANDARD OF REVIEW

"To obtain a preliminary injunction, a plaintiff must show that: (1) without this relief, it

will suffer irreparable harm; (2) traditional legal remedies would be inadequate; and (3) it has

some likelihood of prevailing on the merits of its claims." *Speech First, Inc. v. Killeen*, 968 F.3d

628, 637 (7th Cir. 2020), as amended on denial of reh'g and reh'g en banc (Sept. 4, 2020)

(internal quotations and citations omitted). "[T]he threshold for demonstrating a likelihood of

success on the merits is low." *D.U. v. Rhoades*, 825 F.3d 331, 338 (7th Cir. 2016).

"If a plaintiff makes such a showing, the court proceeds to a balancing analysis, where

the court must weigh the harm the denial of the preliminary injunction would cause the plaintiff

against the harm to the defendant if the court were to grant it." *Mays v. Dart*, 974 F.3d 810, 818

(7th Cir. 2020). The balancing analysis involves a "'sliding scale' approach: the more likely the

plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and

vice versa." *Id.* Finally, "the balance of equities must tip in [the applicant's] favor, and the

injunction [must be] in the public interest." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763

(7th Cir. 2020) (internal quotation marks and citation omitted). "When a party seeks a

preliminary injunction on the basis of a potential First Amendment violation, the likelihood of

success on the merits will often be the determinative factor." *Joelner v. Village of Washington

Park*, 378 F.3d 613, 620 (7th Cir. 2004).

"The standards for granting a temporary restraining order and a preliminary injunction are the same." *Cassell v. Snyders*, 458 F. Supp. 3d 981, 990 (N.D. Ill. 2020), *aff'd*, 990 F.3d 539 (7th Cir. 2021). "When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions." *United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 816 (2000).

## ARGUMENT

The Coalition seeks injunctive relief before the Convention to restore their First Amendment rights to freedom of speech and peaceable assembly. Specifically, the Coalition asks the Court to (1) require Defendants to grant the Coalition's pending permit application; (2) permit the Coalition to hold their protest on the Coalition's proposed route with flexible time, or alternatively, provide for a route that comes within sight and sound of the Convention's venues; and (3) enjoin Defendants from enforcing certain provisions of the Ordinance.

***First***, the Coalition is likely to prevail on the merits of its claims. That is, the Ordinance's restrictions on First Amendment activity are unconstitutional both on their face and as-applied to the Coalition because (1) they are not narrowly tailored to a compelling governmental interest and (2) they do not provide for ample alternative channels for expression. The Ordinance also permits arbitrary enforcement in violation of the Coalition's due process rights under Fourteenth Amendment. ***Second***, traditional legal remedies are not adequate to remedy a constitutional violation of First Amendment rights. ***Third***, the balance of equities favors granting relief because the benefit to the Coalition and public's interest outweighs the inconvenience of traffic congestion and remote security risk to Defendants. If this Court does not provide injunctive relief, the Coalition will be left without any meaningful way to plan its march to exercise its First Amendment rights, as will the general public. Whereas, if this Court does provide injunctive

relief, previous successful peaceful protests in Milwaukee for the same Convention have already shown that a significant safety risk to the public does not exist.

I. **THE COALITION IS LIKELY TO PREVAIL ON THE MERITS.**

    A. **The City's Broad Restrictions on First Amendment Activity Are Unconstitutional Because They Are Not Narrowly Tailored and Provide Insufficient Alternatives for Protected Expression.**

The City's Ordinance is an unconstitutional prior restraint. The Seventh Circuit has explained that "a prior restraint exists when a[n] [ordinance] 'gives public officials the power to deny use of a forum in advance of actual expression.'" *Stokes v. City of Madison*, 930 F.2d 1163, 1168 (7th Cir. 1991) (quoting *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553, (1975)). "The relevant question is whether the challenged regulation authorizes suppression of speech in advance of its expression." *Ward v. Rock Against Racism*, 491 U.S. 781, 795 n.5 (1989). Prior restraints are presumptively illegal, and "the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). As such, prior restraints bear a heavy presumption against constitutional validity. *Collin v. Chicago Park Dist.*, 460 F.2d 746, 753 (7th Cir. 1972) (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963)).

A prior restraint that restricts the time, place, or manner of First Amendment expression is considered constitutionally valid only if it is (1) content neutral, (2) narrowly tailored to serve a significant government interest, (3) leaves open alternative avenues for speech, and (4) does not put too much discretion in the hands of government officials. *GEFT Outdoor, LLC v. Monroe County*, 62 F.4th 321, 327 (7th Cir.), *cert. denied sub nom. GEFT Outdoor, L.L.C. v. Monroe County*, 144 S. Ct. 96, 217 L. Ed. 2d 24 (2023). Additionally, "[w]hen the government takes the extreme measure of requiring licensure to engage in protected speech in traditional public fora, the government must provide clear guidelines for and timely review of applications. *See Forsyth*

*County v. Nationalist Movement*, 505 U.S. 123, 130-31 (1992); *see also Weinberg*, 310 F.3d at 1045; *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225-26 (1990); *McCullen v. Coakley*, 573 U.S. 464, 477 (2014). The government bears the burden of proving that content-neutral burdens on expressive activities are narrowly tailored to further significant governmental interests, while leaving open ample alternatives to communicate with the intended audience. *Id*. at 486. "A statute is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Frisby v. Schultz*, 487 U.S. 474, 485 (1988). "To meet the requirement of narrow tailoring, the government must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier." *McCullen*, 134 S. Ct at 2540.

The Seventh Circuit has noted that "[g]iven their greater importance to the free flow of ideas, public fora receive greater constitutional protection from speech restrictions." *Grossbaum v. Indianapolis-Marion Cnty. Bldg. Auth.*, 100 F.3d 1287, 1297 (7th Cir. 1996). While cities have the right to maintain limitations on where and when First Amendment activities occur, those limitations "must be able to coexist with the First Amendment" and "restrictions must be justified without reference to the content of the regulated speech, narrowly tailored to serve a significant government interest, and leave open ample alternative channels for communication." *Weinberg v. City of Chicago*, 310 F.3d 1029, 1037 (7th Cir. 2002) (internal citations omitted); *see also City of Watseka v. Illinois Pub. Action Council*, 796 F.2d 1547, 1552 (7th Cir. 1986), *aff'd*, 479 U.S. 1048 (1987). The Seventh Circuit applies the ample alternative channels of communication standard "stringently," requiring the government to demonstrate "both that there is a significant relationship between the regulation and the governmental interest" and that "less restrictive alternatives are inadequate to protect the governmental interest." *Id*. at 1554.

The Ordinance fails these First Amendment tests.

**1.     The Ordinance bans a vast amount of protected speech across an arbitrarily large area, and is not narrowly tailored.**

The swath of territory designated as the "Preliminary Security Footprint" in the Ordinance sprawls across more than ninety-square blocks of real estate throughout downtown Milwaukee. *See* Muth Decl. ¶ 7, Ex. 3. All parades are banned in this zone seventeen hours per day. In the seven remaining hours, parades are limited to a single, so-far undisclosed, route that unduly constrains marchers' expressive activity. Event Ord. § 12. Such a broad ban on group expression falls well short of the City's First Amendment obligations by substantially and arbitrarily burdening a range of expressive activities without any hint of tailoring or leaving sufficient alternatives.

Member groups of the Coalition will travel to Milwaukee and join local activists to make their voices heard. Yet the Ordinance prohibits them from "parading *anywhere*" in the Security Footprint unless City officials approve their applications for a fixed time slot on the unknown official parade route, which could potentially be many blocks away from Convention activities and separated by the multi-story buildings of downtown Milwaukee.

To justify its ban on parades, the Ordinance points to a "compelling need to facilitate vehicular and pedestrian traffic during the Convention to accommodate convention-related activities, emergency services, and interests of persons not participating in the assemblies and parades." Event Ordinance Preamble. Even assuming these constitute significant government interests, the Ordinance's prohibition on marches by *any* group, at *any* time of day, under *any* conditions*,* throughout the expansive ninety-block security footprint, except on the City's secret Official Parade Route, is the opposite of narrowly tailoring based on these government interests. Opting for an absolute geographic ban rather than a tailored approach, the City has failed "to

consider other important factors, such as pedestrian and vehicle traffic patterns on the surrounding sidewalks and roadways." *Cutting v. City of Portland*, 802 F.3d 79, 88 (1st Cir. 2015); *see also Reynolds v. Middleton*, 779 F.3d 222, 231 (4th Cir. 2015) (finding that city failed to prove narrow tailoring when its ban on solicitation failed to consider "location or traffic volume"). Indeed, far more limited restrictions on group expression have been struck down for want of narrow tailoring. *See, e.g.*, *Knowles v. City of Waco, Tex.*, 462 F.3d 430, 435 (5th Cir. 2006) (striking down "school zone" ban on parades).

The Ordinance's ban is dramatically broader than the restrictions struck down by the Sixth Circuit in *Saieg v. City of Dearborn*, 641 F.3d 727, 738-9 (6th Cir. 2011). In *Saieg*, a city cited crowd control as justification for restricting leafletting in a one-to-five block area near a festival that drew 250,000 people. The Sixth Circuit struck down the ban, concluding, "[a]lthough the government has an interest in crowd control, the defendants 'must do more than simply posit the existence of the disease sought to be cured.'" *Id.* at 738 (quotation omitted). The court found that the zone was not narrowly tailored—even though it only spanned a few blocks (contrast with Milwaukee's ninety-block zone ), and even though attendance was estimated at 250,000 people (five times greater than the 50,000 people anticipated to attend the 2024 RNC).

The City has numerous narrower approaches available to accomplish its goals that do not violate the First Amendment. *First*, it can dramatically shrink the Security Footprint to an area that is more carefully designed to accommodate its interest in crowd and vehicle control in the immediate vicinity of the actual event. *Second*, the City could allow marches on one side of designated streets, leaving the other open for pedestrian movement. *Third*, the City could restrict parades from particular streets or intersections that are vital to traffic, or restrict them to times when vehicle and pedestrian movement are not at their peak. Other demonstrations have taken

similar routes in the past and have not caused significant harm or delay to traffic areas. The City also has the option to enact a "rolling parade" whereby they close off and re-open City streets as the parade passes.

Rather than narrowly tailoring the restrictions, the City offers an illusion: groups may march without a permit in the Security Footprint, but only if they navigate downtown *sidewalks* without obstructing any doorways or pedestrian traffic, or interfering with traffic at crosswalks. *See* Event Ordinance, §11. This is simply not a viable alternative for the Coalition and similar groups. Courts have recognized that restrictions on parades that obstruct the "normal flow" of traffic add "troublesome layers of uncertainty to determining the scope of the ordinance" because "no one can be certain what conduct it covers." *Knowles v. City of Waco, Tex.*, 462 F.3d 430, 435 (5th Cir. 2006) (striking down as overbroad a ban on "street activity" and "parades" near schools that applied when the "collection of persons is reasonably anticipated to obstruct the normal flow of traffic upon a public street, sidewalk, or other public right of way"); *see also Seattle Affiliate of Oct. 22nd Coalition to Stop Police Brutality, Repression and Criminalization of a Generation v. City of Seattle*, 550 F.3d 788, 800 (9th Cir. 2008) ("nearly every street parade creates potential safety concerns for participants, pedestrians and vehicular traffic," but allowing denial of a permit on this basis gives too much discretion to police). While purporting to create another avenue for expressive activity, the City's sidewalk regulations in fact severely impede the right of large groups like the Coalition to march throughout the Security Footprint. Simply put, it is impossible for a large group to march on Milwaukee's sidewalks without "interfer[ing] with the normal flow" of vehicle or pedestrian traffic.

Additionally, the Ordinance's definition of what constitutes a parade is not narrowly tailored to serve any interest in traffic control during the RNC. The Ordinance makes it unlawful

for any two or more people to travel in unison with a common purpose upon the streets so as to interfere with the normal flow or regulation of vehicular or pedestrian traffic. Event Ordinance, §§2.i, 4.c. The penalty for doing so is a $500 fine, and the failure to pay will result in imprisonment. Event Ordinance, §1.f. The threat of arrest for failing to abide by the Ordinance's overly broad definition of parade results in a chilling effect on an individual's First Amendment rights. *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1064 (7th Cir. 2004) (holding that the overly broad regulation and "[t]he concrete possibility of arrest…makes clear that the [Ordinance] unduly chills the exercise of a[n] [individual's] First Amendment rights").

Similarly, offering the theoretical opportunity to march on the sidewalk does not make the restriction narrowly tailored. Both streets *and* sidewalks are public fora, and the access to one does not resolve the constitutional difficulties of being denied the other. *See, e.g.*, *Seattle Affiliate of Oct. 22nd Coalition to Stop Police Brutality, Repression and Criminalization of a Generation v. City of Seattle*, 550 F.3d 788, 796, 800-01 (9th Cir. 2008) (marchers could challenge police discretion to require use of sidewalk instead of street).

### 2. Reference to a secret future parade route does not provide an ample alternative channel to unrestricted speech.

The City offers a single, unsatisfactory option to groups that wish to march in the ninety-block Security Footprint which surrounds the Convention venues: apply for a limited time slot to walk along a pre-determined route, only during specific hours. There are numerous problems with the City's approach.

The mere fact that the City is dictating a particular (still secret) parade route is the precise converse of what the First Amendment requires. All public fora are open for expressive activity unless the City has a narrowly tailored reason for restricting access. *See, e.g.*, *Mahoney v.*

*Babbitt*, 105 F.3d 1452, 1459 (D.C. Cir. 1997) (rejecting "the proposition that the government may choose for a First Amendment actor what public forums it will use").

In addition, a single, isolated parade route is inadequate compensation for the loss of all potential parade routes in and outside of the Security Footprint. ***First***, the Official Parade Route may fail to put participants within sight and sound of their intended audience, the convention attendees. *See Bay Area Peace Navy v. U.S.*, 914 F.2d 1224, 1229 (9th Cir. 1990) (seventy-five yard security zone around a pier did not provide ample alternatives for communicating the message). This yet to be disclosed parade route may be far from areas where the media is covering the Convention. "[A] parade's dependence on watchers is so extreme that … if a parade or demonstration receives no media coverage, it may as well not have happened." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. Of Boston*, 515 U.S. 557, 568 (1995) (quotation omitted).

To pass constitutional muster, the parade route should pass within sight and sound of the Convention venue. In other words, if you are standing in the "Deer District" before the Fiserv Forum, you should be able to actually see and hear the parade of the Coalition.

But the City has so far kept secret the path of the Official Parade Route. If the Official Parade Route is not within "sight and sound" of the main entrance(s)/exit(s) for RNC attendees, demonstrators are unlikely to reach *any* part of their target audience, particularly where parades are forbidden outside of this route. *See The Coal. to Mar. on the RNC & Stop the War v. The City of St. Paul, Minn.*, 557 F. Supp. 2d 1014, 1028 (D. Minn. 2008) (upholding a convention-related parade permit where "the permit's route brings the [plaintiff] within sight and sound of the convention site" where much of the route was "in plain sight of the glass-walled front of the [convention] Center" and "[a]t its closest point, the permit's route passe[d] within approximately

84 feet of one of the primary entrances to the arena."); *Serv. Employee Int'l Union v. City of Los Angeles*, 114 F. Supp. 2d 966, 968, 975 (C.D. Cal. 2000) (rejecting a small protest zone 260 yards from the entrance to the 2000 Democratic National Convention, later approving a protest zone of 72,000 square feet in a lot across the street from the convention site); *Bl(a)ck Tea Soc'y v. City of Boston*, 378 F.3d 8 (1st Cir. 2004) (finding that, in "a close and difficult case," a city's convention-related ordinance could stand where "[t]he City allowed informal demonstrations within the soft zone *without a permit* so long as those demonstrations involved fewer than 20 people") (emphasis added); *Bay Area Peace Navy*, 914 F.2d at 1229 (9th Cir. 1990) (finding that a seventy-five yard security zone prevented anti-war protestors' demonstration from reaching the intended audience of military leaders); *United States v. Baugh*, 187 F.3d 1037, 1044 (9th Cir. 1999) (holding that a 150- to 175–yard restriction on protestors from the entrance of a visitor center was too far); *Kuba v. 1-A Agr. Ass'n*, 387 F.3d 850, 862 (9th Cir. 2004) (holding that a policy "which relegates communication activity to three small, fairly peripheral areas" was too broad in relation to the government's interest).

**Second**, giving the Coalition a single, limited parade slot hardly satisfies the demands of the First Amendment. It will be extraordinarily difficult for groups of 5,000 marchers to finish a meaningful parade, on any legitimate route within that limited time. Beyond this, the City has not even told the Coalition or others how long a time slot will be available on the secret parade route.

**Third**, the time restrictions on when parades may occur make the officially permitted parade process woefully inadequate as the sole permitted channel to communicate. Parades may occur on the Official Parade Route only from 12:00 pm to 7:00 pm during the work day for the week of the Convention. Event Ordinance,§4.c.  This permitted time window excludes summer evening hours when it is still daylight, and provides limited time after people get off from work.

The schedule of events for the 2024 RNC is not yet available.    Evening sessions can be expected to take place during prime time television, i.e., after 7:00 p.m.. Moreover, delegates are likely to first arrive inside the Credentialed Zone prior to 11:00 am each morning. Thus the parade hours are unlikely to align with the comings and goings of RNC attendees. Indeed, the Ordinance provides that "[t]he appropriate City officials are authorized to not issue registrations *during times of peak convention-related traffic*" [Event Ordinance, §4.c] (emphasis added)—that is, the times when demonstrators would be *most* able to reach their intended audience. *See, e.g.*, *Service Employees Intern. Union, Local 5 v. City of Houston*, 595 F.3d 588, 604 (5th Cir. 2010) (striking down ordinance limiting parades to specific times).

To remediate the serious constitutional flaws in the current Event Ordinance, this Court should order Defendants to allow parades on multiple routes, during flexible hours, and for flexible periods of time/    This Court should also order Defendants to reduce the scope of the Security Footprint.

### 3.    The park space designated by the City is not a sufficient alternative channel for expression.

The City may argue that the groups are free to congregate in one of two downtown parks.[1] Yet park space is scarce relative to the number of likely visitors and speakers. The City's concerns about volume of people supports creating *more* room for them to speak, not less.

The Ordinance, moreover, eliminates the availability of standard special event permits in the ninety-block Security Footprint. Event Ordinance §12. No permits will be issued for any other First Amendment activity throughout the Security Footprint, or for any other park in the

---

[1] Pere Marquette Park and Zeidler Square. The Republican Party is urging the Secret Service and the City to further restrict free speech activities by eliminating access to one of those two parks, Pere Marquette Park, which is the park closest to Fiserv Forum. *See* GOP letter    to Director of Secret Service, Muth Decl. ¶12, Exh.4.

zone, beyond signing up for a slot on an Official Speaker's Platform at an undisclosed location, presumably in one of the two parks.

**B.  The City's Delay in Granting Permits is an Unconstitutional Prior Restraint and This Court Should Enjoin the City to Release Dispositions of Permits Immediately.**

When the government takes extreme measures of requiring licensure to engage in protected speech in traditional public fora, the government must provide clear guidelines for and timely review of applications. *See Forsyth County v. Nationalist Movement,* 505 U.S. 123, 130-31 (1992). The Coalition applied more than a year ago for the required permits to hold expressive events at the RNC and did not receive a response that addresses the substance of their first application. Moreover, the City has not disclosed the secret Official Parade Route and has reserved to itself the right to publish additional rules and regulations in coming days. Event Ordinance §7.

The Coalition has not been told when or how the City may decide upon the applications. At this late hour, the City's delay has so damaged the Coalition's ability to plan that the Coalition faces what amounts to an unjustified denial of their right to speak. The Coalition respectfully asks this Court to protect their rights to free speech and assembly by enjoining the City to issue *some* decision on their permits immediately, and to accommodate the Coalition's attempts to express their message in a way that is no more limited than is reasonable.

**C.  The City's Delay and Constructive Denial of the Coalition's Permit Applications Are Unconstitutional Prior Restraints on Free Speech in Violation of the First Amendment.**

**1.  The City has vested itself with unfettered discretion to control free speech.**

A law is manifestly unconstitutional when it vests the government with unbridled discretion as a mechanism to pre-censor protected speech. *See City of Lakewood v. Plain Dealer*

*Pub. Co.*, 486 U.S. 750, 759 (1988). Laws like these bear such a "heavy presumption" against "constitutional validity" such that:

> [W]hen a regulation fails to place appropriate limits on the discretion of public officials to administer the law in a manner that is abusive of speech, the result should be no different than if the law had brazenly set out to discriminate on the basis of content.

*Polaris Amphitheater Concerts, Inc. v. City of Westerville*, 267 F.3d 503, 509 (6th Cir. 2008).

The "failure to place limitations on the time within which" a permitting authority must issue determinations is a recognized "species of unbridled discretion." *FW/PBS at 223.* Determination of a reasonable amount of time for government entities to issue dispositions of permits is context-specific. In *Am. Target Advert., Inc. v. Giani*, the Tenth Circuit upheld the ten-day administrative review period preceding a state agency's issuance of a permit required for charitable solicitation. 199 F.3d 1241, 1253 (10th Cir. 2000). Conversely, the Fourth Circuit found that a 150-day delay for deciding upon an application to operate an adult bookstore was clearly unconstitutional. *11126 Baltimore Boulevard, Inc. v. Prince George's Ct., Md.* 58 F.3d 988, 1001-02 (4th Cir. 1995) (en banc) *overruled in part by* City of Littleton v. Z. J. Gifts D-4, LLC., 541 U.S. 774, 778 (2004).

The Coalition's permit applications have been pending for more than a year. Despite the Coalition's repeated calls on the City to issue the permits, the City's extensive delay has severely impacted the Coalition's and its member groups' ability to exercise their First Amendment rights. The delay has reduced the number of people able to attend the Coalition's march, the Coalition's ability to properly prepare for speech-making and rallying, and the availability of resources necessary for the Coalition to properly exercise its First Amendment rights. The City's improper refusal to issue a decision allows the City to manage the size, type, and impact of the Coalition's

speech without providing any rationale for exerting such control. The City has vested itself with unfettered discretion to decide all of the terms by which groups may be permitted to speak.

Beyond granting City officials unfettered discretion to decide on the timing of permit decisions, the Ordinance also grants City officials discretion to design the Official Parade Route, with boundless discretion on when to disclose the route. The Event Ordinance gives officials the discretion to modify the regulations in the Ordinance itself, without going back to the Common Council. Event Ordinance § 6.b. The officials are also instructed to publish "additional rules and regulations" governing the Official Parade Route at a reasonable time before the Convention, but without a description of what such rules and regulations might cover. *Id*. at § 7. Officials are given the power to increase or decrease the number or length of time slots available for parades depending on demand or Convention activities. *Id*. at § 4.c.

Because the Ordinance fails to place "explicit limits" on the City's decision-making authority over permits and the scope of permitted activity it affords the City unconstitutionally broad discretion to censor protected speech. *Lakewood*, 486 U.S. at 769; *see also Stonewall Union v. City of Columbus*, 931 F.2d 1130, 1134 (6th Cir. 1991). This Court must divest the City of this unconstitutional discretion and enjoin it to make prompt and carefully justified decisions as to the Coalition's applications, as is the City's burden.

> ### 2. The Coalition is entitled to time for appeal and to obtain judicial review of the City's decision on its permit application, and that time is evaporating.

The City's delay creates a further violation of the Coalition's constitutional rights by not allowing any time to appeal a possible denial of its permit application. If this Court does not enjoin the City to make its decisions, the Coalition will lose any meaningful opportunity to appeal an adverse decision. As this Court has explained, a prior restraint against free speech will

only be upheld if it provides adequate standards to guide an official's decision and subjects the decision to effective judicial review. *Candy Lab Inc. v. Milwaukee Cty.*, 266 F. Supp. 3d 1139, 1150 (E.D. Wisconsin 2017); *see also Déjà vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty., Tennessee*, 274 F.3d 377, 391 (6th Cir. 2001) ("[S]ystems of prior restraint will be upheld only if they provide for prompt judicial review of all decisions denying the right to speak[]"). While the City's parade regulations facially articulate an appeal process, past nominating conventions make clear that when the hour grows too late, these provisions become hollow. *See, e.g.*, *Bl(a)ck Tea Society v. City of Boston*, 378 F.3d 8, 14 (2d Cir. 2004); *see also United for Peace & Justice v. City of New York*, 323 F.3d 175, 178 (2d Cir. 2003). Very soon, the Coalition will have *no* meaningful opportunity for judicial review.

At the 2004 DNC in Boston, groups wanting to express themselves were prevented from effectively doing so because they were forced to seek relief too close in time to the convention. In his *Bl(a)ck Tea Society* concurrence, Chief Judge Lipez explained,

> [F]or an event of this magnitude, taking place at a time of heightened national security, there is an inescapable need for firm, documented understandings well in advance of the event about arrangements to accommodate demonstrations. If the parties cannot reach satisfactory agreements, there must be adequate time to seek recourse in the courts. Adequate time means months or at least weeks to address the issues.

378 F.3d at 16 (Lipez, C.J., concurring).

The Coalition has been seeking a parade permit—or at least some bare indication of where they would be able to march—for *more than a year* since the Coalition submitted its original applications. The City, which has been in the process of planning for the RNC for a year-and-a-half, (and went through this same exercise four years ago for the Democratic National Convention), need not and should not still be silent only six weeks out from the Convention. The

City's silence has forced the Coalition to ask this Court to compel the City to preserve the Coalition's rights to speech and assembly.

**D.**      **The Special Event Ordinance Allows the Commissioner to Engage in Arbitrary and Discriminatory Enforcement in Violation of the Due Process Clause.**

For the Ordinance to pass constitutional muster, it must contain explicit standards that prevent the Commissioner from arbitrarily or discriminatorily denying or revoking the Coalition's parade permit application. *See Bence v. Breier*, 501 F.2d 1185, 1190 (7th Cir. 1974) (explaining that regulation must "create[] a standard of conduct [that] is capable of objective interpretation by … those Departmental officials who must enforce it"). Where a law is "so standardless that it invites arbitrary enforcement," courts have held that such a law violates the guarantee of due process. *Johnson v. United States*, 576 U.S. 591, 595 (2015). This standard applies with "particular force" when a law implicates the freedom of speech and assembly. *Hynes v. Mayor & Council of Borough of Oradell*, 425 U.S. 610, 620 (1976). In *City of Chicago v. Morales*, the Supreme Court held that a law violated the due process clause because it failed to include "sufficiently specific limits" for the police, thereby authorizing arbitrary and capricious enforcement. 527 U.S. 41, 60-64 (1999).

Here, the Ordinance fails to provide clear objective standards that the Commissioner of Public Works must follow in deciding whether to revoke a permit or deny the Coalition's parade permit application to protest the RNC. The Ordinance allows the Commissioner to make a subjective determination that an applicant or person represented by an applicant "engaged in violent or destructive conduct in connection with a previous parade or other public assembly, in violation of any provisions of the Milwaukee Code of Ordinances or any state or federal laws" without the need to find evidence of an arrest, conviction, or formal charge. Event Ordinance §§

9a and 9a-2. The Ordinance fails to safeguard against the Commissioner arbitrarily enforcing the Ordinance to deny an application for or revoke a parade permit.

Accordingly, this Court should conclude that the Ordinance "fail[s] to provide reasonable constraints on the discretion of enforcement officials" because it "authorizes…arbitrary and discriminatory enforcement" thus "creat[ing] significant chilling effects on constitutionally protected activity." *See Brown v. Kemp*, 86 F.4th 745, 771–72 ( 7th Cir. 2023) (internal citations omitted).

## II.   TRADITIONAL LEGAL REMEDIES ARE INADEQUATE.

The Seventh Circuit has consistently determined that traditional remedies are inadequate to compensate plaintiffs whose constitutional rights are violated. *ACLU v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012). Just as in many First Amendment cases, the damages to the Coalition are difficult to quantify, and therefore, damages are not an adequate remedy in this case. The Coalition seeks relief from this Court based on the City's efforts to suppress its speech and impede its ability to disseminate its message, which has negatively impacted the Coalition's ability to further its nonprofit organizational mission. Calculating such damages is impossible without easy reference to a formula; rather, these damages require an intricate analysis and the quantification of subjective ideas. Therefore, it is much better to prevent these damages in the first place, rather than to attempt to put a number on them after the fact. This factor favors the issuance of a preliminary injunction.

## III.   THE COALITION WILL EXPERIENCE IRREPARABLE HARM IF A PRELIMINARY INJUNCTION IS NOT GRANTED.

Harm is irreparable for the purposes of a preliminary injunction if it "cannot be prevented or fully rectified by the final judgment after trial." *Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1045 (7th Cir. 2017) (quoting *Girl Scouts of*

*Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1089 (7th Cir. 2008)).
As the Supreme Court and Seventh Circuit have stated, the "loss of First Amendment freedoms,
for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*,
427 U.S. 347, 373 (1974); *Joelner v. Village of Washington Park*, 378 F.3d 613, 620 (7th Cir.
2004). And, as this Court has explained, the loss of First Amendment freedoms "is presumed to
constitute irreparable injury for which money damages are inadequate." *Camelot Banquet
Rooms, Inc. v. U.S. Small Bus. Admin.*, 458 F. Supp. 3d 1044, 1062 (E.D. Wis. 2020) (granting
motions for preliminary injunction); *see also Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859
(7th Cir. 2006). As discussed in its Complaint and *supra*, the Coalition has suffered and will
continue to suffer from the City's violation of its First Amendment rights if Defendants are not
immediately enjoined from enforcing the Ordinance and issuing a parade route that differs
substantially from the parade route the Coalition submitted in its original permit application.

The irreparable harm here is concrete, severe, and ongoing. For example, due to the
City's failure to issue a decision on the Coalition's permit application and failure to provide the
Coalition with a map of the confirmed parade route, the Coalition has been unable to organize or
plan its protest, which has impeded its ability to recruit people to its cause. The City's actions
have and will continue to cause the Coalition to suffer irreparable harm by both depriving the
Coalition of its constitutional rights and by negatively impacting its non-profit purpose.
Accordingly, this Court should conclude that this irreparable harm will continue without a
preliminary injunction.

## IV.    THE BALANCE OF POTENTIAL HARM FAVORS GRANTING THE REQUESTED PRELIMINARY INJUNCTION.

This Court also "must weigh the harm the denial of the preliminary injunction would
cause the plaintiff against the harm to the defendant if the court were to grant it." *Mays*, 974 F.3d

at 818. Injuries to Defendants are purely speculative. If this Court grants the preliminary relief that the Coalition seeks, there will be no great cost or expenditure of time incurred by requiring the Defendants to issue a decision on the Coalition's permit application (something that the City must do before the Convention occurs anyway); precluding Defendants from enforcing the unconstitutional provisions of the Ordinance (which requires no action); and from issuing a parade route that prevents the Coalition from being within sight and sound of the RNC (again, something the City must do before the Convention occurs).

In contrast, as noted above, the irreparable harm suffered by the Coalition is concrete, severe, and ongoing. As a result, the balance of equities tips in the Coalition's favor given the irreparable harm it will continue to suffer in the absence of a preliminary injunction, and the minimal effort necessary to vindicate its rights under the First Amendment.

## V.    IT IS IN THE PUBLIC INTEREST TO GRANT THE COALITION'S REQUEST FOR A PRELIMINARY INJUNCTION

"[P]rotecting First Amendment freedoms always serves the public interest." *Ind. Civ. Liberties. Union Found., Inc. v. Superintendent, Ind. State Police*, 470 F. Supp. 3d 888, 908 (S.D. Ind. 2020); *see also Alvarez*, 679 F.3d at 589–90. Public interest is not harmed by the preliminary enjoining of enforcement of a law that is likely unconstitutional. *Union Found.*, 470 F. Supp. 3d at 908. When enforcing a statute based on public safety and protecting city areas, Defendants must prove that these interests are not purely speculative. *Id*. at 907. "[U]nconstitutional restrictions on speech are generally understood not to be in the public interest and to inflict irreparable harm that exceeds any harm an injunction would cause[.]" *Smith v. Exec. Dir. of Ind. War Mem'ols Comm'n*, 742 F.3d 282, 286 (7th Cir. 2014).

In *Union Found.*, the defendants argued that their ordinance protected public safety and the free flow of pedestrian and vehicular traffic. *Union Found.*, 470 F. Supp. 3d at 907. The court

there found that defendants provided no causal link between the plaintiffs' expression of their First Amendment rights and any damage to public safety or traffic flow. *Id*. Without proof of a causal link between proposed actions and the Ordinance's alleged interests, Defendants cannot show harm if a preliminary injunction is enforced. *Id*. Here, the City has not provided any definite proof that the Coalition's proposed parade route or march will actually cause harm to public safety. Given that the Ordinance is a violation of the First Amendment (as shown *supra*), the balance of harms would need "to weigh heavily in Defendants' favor" to support a refusal of a grant of a preliminary injunction. *Id*. Here, as in *Union Found.*, the Defendants' alleged public interest is speculative, and the balance of harms does not weight in Defendants' favor. *Id*. A preliminary injunction of the Ordinance would serve the essential public interest in First Amendment expression and rights.

## CONCLUSION

For the foregoing reasons, the Coalition respectfully requests that this Court grant its motion for a preliminary injunction.

Dated: June 5, 2024                              Respectfully submitted,


                                                 ACLU OF WISCONSIN FOUNDATION

                                                 By: _/s R. Timothy Muth_____

                                                 RYAN V. COX
                                                 R. TIMOTHY MUTH
                                                 ACLU of Wisconsin Foundation
                                                 207 E. Buffalo Street, Suite 325
                                                 Milwaukee, WI 53202
                                                 Phone:  414-272-4032
                                                 Fax: 414-272-0182
                                                 tmuth@aclu-wi.org

                                                 *Attorneys for the Coalition to March
                                                 on the RNC*