UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| COALITION TO MARCH ON THE RNC,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF MILWAUKEE, CAVALIER JOHNSON in his official capacity as Mayor of the City of Milwaukee, JERREL KRUSCHKE in his official capacity as Commissioner of Public Works for the City of Milwaukee, and KIMBERLY A. CHEATLE in her official capacity as Director of the United States Secret Service,<br><br>Defendants. | Civil Action No: 2:24-cv-00704 |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AS TO DEFENDANT UNITED STATES SECRET SERVICE**

Plaintiff files this Reply in Support of its Emergency Motion for Temporary Restraining Order and/or Preliminary Injunction as to Defendant Kimberly A. Cheatle in her official capacity as Director of the United States Secret Service (ECF 37) and pursuant to the Minute Entry of the Court's July 3, 2024 hearing (ECF 43) in which the Court noted that the parties would brief the issues raised by the United States Secret Service ("USSS") in Response to that motion in post-hearing submissions.

As a preliminary matter, Plaintiff notes for the Court that service on the Defendant USSS has been completed as of this filing, including service on the U.S. Attorney for the Eastern District of Wisconsin, and that Proof of Service documents shall be filed immediately upon their availability from the United States Postal Service, likely by July 5, 2024. Accordingly, Plaintiff's

initial request for a Temporary Restraining Order is moot and, instead, the Court is authorized to enter a Preliminary Injunction as to all Defendants in this case.

I. **Plaintiff has sufficiently pled facts to give Defendant USSS notice that its claims for declaratory and injunctive relief rest on the First Amendment.**

"Under the modern regime of the Federal Rules, the complaint need contain only factual allegations that give the defendant fair notice of the claim for relief and show the claim has 'substantive plausibility.'". *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 517 (7th Cir. 2015) (citing *Johnson v. City of Shelby, Miss*., 574 U.S. 10, 12 (2014)); *see also Moore v. National YMCA, Inc*., No. 19-cv-761, 2019 WL 4059151 at *3 (N.D. Ill. August 28, 2019) (unpublished) (citing *Runnion*, 786 F.3d at 517) (holding that when analyzing whether a plaintiff has given proper notice of a claim in its complaint, placing special significance on a section in the complaint enumerating the stated claims "would raise form over substance in contravention of the Federal Rules of Civil Procedure"). The Seventh Circuit has also made it clear that the Federal Rules of Civil Procedure do not require a complaint to specify a legal theory or statute that supports a plaintiff's claim for relief. *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992); *see also N.A.A.C.P. v. Am. Fam. Mut. Ins. Co*., 978 F.2d 287, 292 (7th Cir. 1992) ("A complaint should limn the grievance and demand for relief. It need not identify the law on which the claim rests, and different legal theories therefore do not multiply the number of claims for relief.").

Plaintiff's complaint makes at least the following allegations as to the Defendant USSS, sufficient to put it on notice that Plaintiff seeks declaratory and injunctive relief as the USSS based on Plaintiff's allegations that the USSS's "credentialed zone," as part of a regulatory scheme jointly created by the USSS and the City Defendants, violates Plaintiff's First Amendment rights:

2

- "Within th[e] security footprint, the United States Secret Service has designated a 'credentialed zone' in which it plans to entirely prohibit First Amendment protected activity of anyone other than individuals who have received credentials from the Republican National Committee, and in which it threatens arrest and potential prosecution of up to 10 years in prison for unauthorized entry pursuant to 18 U.S.C. § 1752." ECF 33 at ¶ 6.

- "The Coalition brings this suit to vindicate its rights to engage in First Amendment expression activity in the traditional public forum of the streets in a manner where it can be seen and heard by attendees of the Convention." ECF 33 at ¶ 9.

- "Within the Security Footprint there is also a higher security "Credentialed Zone" which, on information and belief, will be secured by tall steel fencing, and where only persons holding official credentials will be allowed to enter after passing through security checkpoints. Uncredentialed entry into this zone may carry a penalty of fines and up to 10 years imprisonment pursuant to 18 U.S.C. Sec. 1752." ECF 33 at ¶ 33.

- "The RNC has been designated as a National Special Security Event pursuant to 18 U.S.C. § 3056(e)(1), as have previous presidential nominating conventions. When an event receives this designation, the United States Secret Service becomes the lead federal agency in developing, exercising, and implementing security plans for that event." ECF 33 at ¶ 46.

- "On June 21, 2024, the US Secret Service revealed publicly during a press conference the dimensions of the credentialed zone. This extensive area surrounds the Fiserv Forum, the Panther Arena, and the Baird Convention Center and several blocks on each side of those venues. In total, more than 25 square blocks of downtown Milwaukee are totally cordoned off. Within this area, only persons credentialled by the Republican Party and the Secret Service will be allowed to enter." ECF 33 at ¶ 50.

- Exhibit 22 to the Amended Complaint, showing a map of the USSS's credentialed zone.

- Exhibit 24 to the Amended Complaint, showing a map of the Plaintiff's proposed parade route.

- "The credentialled zone extends across the parade route originally proposed by the Coalition (Exhibit 1) at several points, making it impossible for the Coalition to march along its originally proposed route." ECF 33 at ¶ 52.

- "The extension of the Credentialled Zone was done for the express purpose of frustrating the First Amendment rights of the Coalition and other potential persons opposing views different from those of the Republican party." ECF 33 at ¶ 61.

- "The correspondence from counsel for the Republican National Committee to the Director of the Secret Service, Exhibits 4 and 21, made it clear that it sought the extension of the zone not because the RNC was going to have a convention event in that area, but because it wanted to move protesters farther away from their audience." ECF 33 at ¶ 62.

- "The extension of the Credentialled Zone to include Pere Marquette Park came after weeks of intense pressure from Republican Party officials on the Secret Service and the City." ECF 33 at ¶ 63.

- "The extension of the Credentialled Zone was not created for any legitimate government security interest, but only for purposes of limiting where and how the Coalition and others could speak and protest." ECF 33 at ¶ 64.

- "The extension of the Credentialled Zone is not narrowly tailored and is a violation of the First Amendment rights of the Coalition and other protesters." ECF 33 at ¶ 65.

- "Defendants' actions have put the choice on the Coalition of forgoing the opportunity to march in view of the Republican delegates or risk citation, arrest, or conviction." ECF 33 at ¶ 81.

- "Plaintiff respectfully requests that this Court grant the following relief: Declaratory relief, including the following: [a] declaration that Defendants . . . enacted prohibitions preventing them from using their preferred parade route; [a] declaration that the Event Ordinance and the Secret Service's "credentialed zone" violates the First and Fourteenth Amendments to the United States Constitution on their face and as applied to Plaintiff; [p]reliminary relief against Defendants, including a preliminary injunction that: [e]njoins Defendants from enforcing unconstitutional provisions of the Special Event Ordinance as described in this Complaint; and Orders Defendants to grant the Coalition a parade permit allowing the Coalition to assemble and march on July 15, 2024 at a time and along a route that allows them to communicate their message to their intended audience of RNC delegates . . ." ECF 33 at pp. 22-23.

These factual allegations and requests for relief were sufficient to put to the USSS on notice of the claims and requested relief sought against it, and this is further supported by the fact that the USSS did actually respond to the merits of Plaintiff's First Amendment claim in its responsive briefing. *See* ECF 39 at pp. 4-7.

    **II.    Claims for Declaratory and Injunctive Relief alleging unconstitutional actions by a federal agency or officer are proper without any need for an authorizing statute, and the Court may issue such relief pursuant to its inherent powers.[1]**

---

[1] Plaintiff's counsel notes as to this issue that Assistant U.S. Attorney Michael Carter, counsel for the USSS, should be commended for his professionalism and forthright candor with the Court on this question at the Court's July 3, 2024 hearing where Mr. Carter indicated to the Court that the Plaintiff was likely on "good footing" pursuant to *Larson* if it was seeking only prospective injunctive relief (and not monetary damages) against the USSS.

While the United States and its agencies and officers are generally immune from suit as sovereign, *FDIC v. Meyer*, 510 U.S. 471, 475 (1994), the Supreme Court has nevertheless recognized that an exception to this general immunity applies when "the action of an officer of the sovereign . . . can be regarded as so 'illegal' as to permit a suit for a specific relief against the officer [when those actions] are constitutionally void." *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 701-702 (1949). It is the consensus of the courts that *Larson* permits a plaintiff to seek injunctive relief against an officer or agency of the federal government to stop it from taking unconstitutional actions. *See Dotson v. Griesa*, 398 F.3d 156, 177 & n.16 (2d Cir. 2005) (collecting cases and noting that most circuits, including the 7th Circuit have recognized that *Larson* permits both affirmative and prohibitive injunctive relief against federal officers in all but a very limited set of cases). In *Clark*, the Seventh Circuit explained the application of this exception, noting that "sovereign immunity precludes suits falling within the *Larson* exceptions only where to do otherwise would impose an intolerable burden on governmental functions, outweighing any consideration of private harm." *Clark v. U.S.*, 691 F.2d 837, 840-41 (7th Cir. 1982) (internal quotations omitted); *see also Schlafly v. Volpe*, 495 F.2d 273, 280 (7th Cir. 1974). The Seventh Circuit also recognized in *Clark* that claims for declaratory judgment as to the Constitutionality of federal actions are also categorically justiciable under the *Larson* exceptions, noting that, "[a] declaratory judgment is just that: a declaration of rights. It is not a coercive remedy like an injunction or a money judgment." *Id*. at 841.

Further, the Court's authority to enter such injunctions arises not from any authorizing statute, but rather, from the Court's inherent authority to grant equitable relief pursuant to its Federal Question Jurisdiction, limited only by clear expression of Congress. *See Elgin v. Dep't of Treasury*, 1325 S. Ct. 2126, 2132–34 (2012); *see also id. at 2141 (Alito, J., dissenting)* (citing *Bell*

*v. Hood*, 327 U.S. 678, 684 (1946) (suggesting that this inherent power of the courts is perhaps even beyond the reach of Congress to limit, noting that there is an "established practice for th[e] Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution").

Dated: July 5, 2024            Respectfully submitted,

By: /s R. Timothy Muth

R. TIMOTHY MUTH
Bar No. 1010710
tmuth@aclu-wi.org
RYAN V. COX
Bar No. 24074087
rcox@aclu-wi.org
HAYLEY I. ARCHER
Bar No. 1101459
harcher@aclu-wi.org

ACLU OF WISCONSIN FOUNDATION
207 E. Buffalo Street, Suite 325
Milwaukee, WI 53202
Phone: 414-272-4032

*Attorneys for the Coalition to March on the RNC*