UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

COALITION TO MARCH ON THE RNC,

        Plaintiff,

v.                                                        Case No. 24-CV-704

CITY OF MILWAUKEE,
CAVALIER JOHNSON in his official capacity
as Mayor of the City of Milwaukee, and
JERREL KRUSCHKE in his official capacity as
Commissioner of Public Works for the City of Milwaukee,

        Defendants.

---

### DEFENDANTS' OBJECTIONS AND BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

---

## INTRODUCTION

Although the Court enjoined the City[1] from revoking or denying parade registrations during the RNC, the order did not directly benefit the Coalition to March on the RNC ("Coalition") or alter the legal relationship between the Coalition and the City. The Coalition aimed for an order requiring the City authorizing it to march along its preferred route, but fell short when the Court struck only so much of the Ordinance as provided discretion to revoke or deny registrations to use the City's Official Parade Route. The Coalition was not benefited by this result because (a) the City approved its registration, and (b) the Coalition declined to use the Official Parade Route in any event.

---

[1] Plaintiff's original complaint (ECF No. 7) and amended complaint (ECF No. 33) both named the City of Milwaukee, Mayor Cavalier Johnson, and Commissioner of Public Works Jerrell Kruschke as Defendants. Because claims against city employees in their official capacity are functionally claims against the city, the "City," as used herein, refers collectively to the named defendants.

If the Coalition prevailed at all, its victory was so minimal that no fee is the only reasonable fee. The litigation imposed heavy costs upon the City and the Court, the relief granted was insignificant in relation to the relief sought, and the claim upon which relief was granted was only a minor part of the entire suit. Even if Court were inclined to award an attorney's fee, it need not calculate a presumptive fee award based on hours expended and may instead award a sensible, low fee award. If the Court were inclined to calculate a presumptive fee, it must exclude unnecessary and duplicative hours from its calculation and should reduce the fee award in proportion to the degree of success obtained. The fee award requested by Plaintiff's counsel, is not reasonable and the special circumstances of this case militate against any fee award.

## RELEVANT FACTS

A. <u>Litigation Achieved Only Limited Success.</u>

The Coalition, an unincorporated association of organizations, filed suit against the City claiming that the Special Event Ordinance, a regulation which applied to only a designated portion of downtown while the City hosted the RNC, violated its rights under the First and Fourteenth Amendment. (ECF No. 46, p. 2) The Coalition's primary request was for an order requiring the City to allow the Coalition to demonstrate along its preferred route. (*Id.*). This request failed because the City's regulatory scheme was a reasonable time-place-and-manner regulation, narrowly tailored to serve significant government interests, that left open ample alternatives for speech. (*Id.*, p. 15-27).

The Coalition also sought to enjoin the City from enforcing so much of the ordinance as limited parades to a designated route, as well as Section 9a-2 which provided discretionary authority to revoke or deny registrations for use of the parade route and speaker's platforms based on prior conduct. (*Id.*, p. 2). Although the Court found that the regulation of "parades" was neither

2

vague, nor overbroad and denied the Coalition's request to enjoin the City from enforcing its provision limiting parades to the designated route, *see* ECF No. 46, p. 32-34, it held that the provision regarding denial or revocation of parade registrations was an overbroad, prior restraint that could chill speech. (ECF No. 46, p. 28-32). The Court entered a preliminary injunction against enforcing Section 9a-2 of the Special Event Ordinance <u>only</u> on July 8, 2024. (ECF No. 47; *see also* ECF No. 49 (docketing judgment and permanent injunction on July 11, 2024.)).

Section 9a-2 was never applied to deny or revoke any applicants' use of the Official Parade Route or Speaker's Platform. (Muche Decl., ¶ 3).

B. <u>The Requested Fee is Not Reasonable.</u>

Lawyers working for the ACLU of a Wisconsin ("ACLU") represented the Coalition, but the ACLU was not a member of the Coalition. (ECF No. 3-3). The Coalition's expedited motion for preliminary injunction was filed on June 5, 2024, *see* ECF No. 1, followed by its original complaint the following day. (ECF No. 7). Neither the emergency motion, nor the original complaint referenced Section 9a-2 of the Special Event Ordinance. (ECF No. 46, p. 28, n. 4). Plaintiff's amended complaint named Kimberly A. Cheatle, in her official capacity as Director of the United States Secret Service, for the first time. (ECF No. 33). The allegations against the City remained the same. (*Id.*).

Plaintiff submitted time logs reflecting entries from May 2—July 4, 2024. (ECF No. 53-1). Plaintiff calculates the lodestar amount as $68,800. (ECF No. 53-1). The ACLU claims 288.9 total staff hours were attributed to this suit. (ECF No. 53-1; *see also* ECF No. 53-2, ¶ 15). Each involved staff member was billed at his or her uniform billing rate. (ECF No. 53-2, ¶ 9; *see also* ECF No. 53, p. 8). Although 52.8 hours related to work on the Secret Service claims[2], law clerks'

---

[2] The "Secret Service," as used herein, refers to the claims raised against Defendant Cheatle.

attendance at mediation and oral argument, and work related to intervention were partially or totally discounted, up to 33.3 additional hours totaling $14,252 in fees related to the amended complaint were not discounted. (ECF No. 53-1; *see also* ECF No. 53, 8). The time logs additionally reflect 26.6 hours related to preparing for and attending mediation, and debriefing afterwards, representing $7,936.50 in fees. (ECF No. 53-2).

Plaintiff reduced the lodestar by 1/3 to arrive at a requested fee award of $45,866.67. (ECF No. 53, p. 8). The Court granted relief on one of three claims; 1/3 of the Plaintiff's proposed lodestar amount equals $22,933.33. If the Court subtracted the 33.3 hours related to the amended complaint and the 26.6 hours related to mediation, the new lodestar amount would be $46,611.00 (that figure divided by three equals $15,537.17).

C. The Coalition's Public Statements Reveal Their Primary Objective.

The Coalition made numerous public statements about their plans and objectives between the filing of suit and the start of the RNC. (*See* ECF No. 29, ¶¶ 25-27; ECF No. 30, ¶ 4; ECF No. 30-1)[3]. Throughout, the Coalition consistently maintained that it would not march along the City's designated route. (*Id*.). Before the parties appeared for oral argument on July 3rd, the Coalition held a planned press conference outside the courthouse. (ECF No. 30-1). Omar Flores, speaking as co-chair and representative of the Coalition, stated:

- "The two routes being proposed by the City are unacceptable for a multitude of reasons."

- "We will not engage with this permitting process for our own safety."

---

[3] *See also* https://urbanmilwaukee.com/2024/07/09/despite-losing-lawsuit-coalition-to-march-on-rnc-will-proceed-without-permit/; https://www.wuwm.com/2024-07-09/we-are-the-opposition-in-action-milwaukee-activists-to-march-on-rncs-first-day; https://www.jsonline.com/story/news/politics/2024/07/09/milwaukee-protest-group-announces-rnc-march-route-drops-aclu-lawsuit/74339935007/; https://urbanmilwaukee.com/2024/07/12/coalition-to-march-on-rnc-city-reach-last-minute-deal/.

- "The Coalition to March on the RNC remains steadfast in trying to secure our permit for our march, but we do plan on marching without one if we need to."

(*Id.*).

On July 9th, the Coalition held another press conference reported on by the Milwaukee Journal Sentinel after the Court issued its ruling.[4] Flores reiterated that the Coalition would follow its own route.[5] The Coalition outlined a new route that called for crossing the river east on Wells Street, proceeding south on 2nd Street, and then heading east on Wisconsin Avenue.[6] The Coalition announced its final route on Friday, July 12, which headed southwest on Plankinton Avenue after crossing the river at Wells Street avoiding a conflict with the City's Official Parade Route along 2nd Street.[7]

Speaking to the Milwaukee Journal Sentinel about the ruling, Flores characterized it as an "extremely weak win."[8] He also criticized the City's content-neutral registration process because it did not guarantee that other groups, with conflicting viewpoints, would not demonstrate at or around the same time. (ECF No. 30-1).[9]

D. The City Facilitated the Coalition's Plans Before, During, and After This Suit.

---

[4] *See* https://www.jsonline.com/story/news/politics/2024/07/09/milwaukee-protest-group-announces-rnc-march-route-drops-aclu-lawsuit/74339935007/.

[5] *Id.*; *See also* https://www.wuwm.com/2024-07-09/we-are-the-opposition-in-action-milwaukee-activists-to-march-on-rncs-first-day ("The coalition released its own parade route, which begins and ends at Red Arrow Park.").

[6] *See* https://www.jsonline.com/story/news/politics/2024/07/09/milwaukee-protest-group-announces-rnc-march-route-drops-aclu-lawsuit/74339935007/.

[7] *See* https://www.fox6now.com/news/coalition-march-rnc-prepares-agreement.

[8] *See* https://www.jsonline.com/story/news/politics/2024/07/09/milwaukee-protest-group-announces-rnc-march-route-drops-aclu-lawsuit/74339935007/.

[9] *See also* https://urbanmilwaukee.com/2024/07/09/despite-losing-lawsuit-coalition-to-march-on-rnc-will-proceed-without-permit/.

Beginning in February 2024, city staff maintained regular contact with Plaintiff's counsel about the Coalition's plans to demonstrate during the RNC. (ECF No. 29, ¶ 6). Assistant City Attorney Block outlined City plans regarding parades and speaker's platforms, notified the Coalition of public hearings, and answered specific questions. (ECF No. 29, ¶¶ 7-9). Plaintiff's counsel requested that parade time slots be granted on a first-come-first-served basis and the City adopted that method. (ECF No. 29, ¶¶ 10, 15-16). The City even shared a draft copy of the Special Event Ordinance as a courtesy before it was adopted. (ECF No. 29, ¶ 12).

In particular, City staff advised in April that the final parade route would not be made public until 3-5 weeks before the event. (ECF No. 29, ¶ 19). The City accepted applications for use of the Official Parade Route via an online portal. (ECF No. 42 at ¶ 3). The City assured Plaintiff that its "place in line" for its preferred time slot was reserved before it filed suit. (ECF No. 29, ¶ 16). No one who applied for a demonstration slot was revoked or denied for any reason. (Muche Decl., ¶ 3).[10]

The parties remained in communication up to the day this suit was filed. (ECF No. 29, ¶¶14-22). To be sure, the City did not grant every concession sought. The Coalition wanted the parade route to be made public earlier, wanted speaker's slots to be assigned to facilitate its plans to present coordinated counter-programming to the RNC, objected to some prohibited items, and wanted others (i.e. guns) to be prohibited. (ECF No. 29, ¶¶ 17-19).

The parties attended mediation on Monday, June 17. (ECF No. 29, ¶ 23). Nick DeSiato, the Mayor's Chief of Staff, and the Commissioner of Public Works, Defendant Kruschke, as well as representatives of the Milwaukee Police Department and the Secret Service involved in RNC-

---

[10] *See also* https://www.jsonline.com/story/news/politics/2024/07/09/milwaukee-protest-group-announces-rnc-march-route-drops-aclu-lawsuit/74339935007/.

planning personally attended. (ECF No. 14). The City was prepared to present alternatives to resolve litigation. (*Id*.). The Coalition's public statements following mediation demonstrate that the only offer it was willing to consider was acquiescence to its plans. (ECF No. 29, ¶¶ 25-26).

On Monday July 1, City staff sent confirmed via email the Coalition's registration to use the Official Parade Route starting at noon on Monday, July 15. (Muche Decl., ¶ 4, Ex. 1). The Coalition did not respond. (Muche Decl., ¶ 5).

Following the Court's ruling, the Coalition publicly announced another new plan on Tuesday, July 9th.[11,12] In an interview with Urban Milwaukee, Flores declared: "We're not engaging with the city's route at all."[13] The post-judgment route avoided the credentialed zone, while also rejecting the City's official parade route.[14]

---

[11] *See id*.

[12] *See also* https://www.wuwm.com/2024-07-09/we-are-the-opposition-in-action-milwaukee-activists-to-march-on-rncs-first-day ("The coalition released its own parade route, which begins and ends at Red Arrow Park.").

[13] *See* https://urbanmilwaukee.com/2024/07/09/despite-losing-lawsuit-coalition-to-march-on-rnc-will-proceed-without-permit/ ("The coalition is still planning to march and not along the city-designated route.").

[14] *See* https://www.jsonline.com/story/news/politics/2024/07/09/milwaukee-protest-group-announces-rnc-march-route-drops-aclu-lawsuit/74339935007/.



The Coalition to March on the RNC 2024 announced a new protest route that will avoid the Secret Service's restricted security perimeter. *Coalition To March On The RNC 2024*

The City immediately recognized that this plan called for the Coalition to occupy the Official Parade Route on Wisconsin Avenue between 2nd Street and Plankinton Avenue. (Muche Decl., ¶ 10). City staff contacted Plaintiff's counsel on July 10. (Muche Decl., ¶ 11). ACLU staff advised that they were no longer advising the Coalition on matters outside of litigation, and so City officials ultimately met directly with the Coalition on Friday, July 12, to facilitate plans that did not violate the Special Event Ordinance's prohibition against interference or disruption of groups use of the Official Parade Route. (Muche Decl., ¶¶ 10-12). Through the City's efforts, the parties agreed upon a final route which the Coalition followed without incident or disruption to other RNC plans. (Muche Decl., ¶¶ 13-16).[15,16]

---

[15] *See* https://urbanmilwaukee.com/pressrelease/coalition-reaches-handshake-agreement-with-the-city-for-march-route/.

[16] *See* https://www.wuwm.com/2024-07-15/thousands-march-in-downtown-milwaukee-to-protest-the-republican-national-convention.

8



Map courtesy of the Coalition to March on the RNC.

**ARGUMENT**

**I. THE COURT SHOULD AWARD LOW ATTORNEY'S FEES OR NO FEE AT ALL.**

Congress has granted the federal courts discretion to award "a reasonable attorney's fee" to "the prevailing party" in civil rights litigation. *Farrar v. Hobby*, 506 U.S. 103, 116, 113 S.Ct. 566, 575 (1992) (O'Connor, J. concurring). *See also* 42 U.S.C. § 1988. However, Section 1988 is not "a relief Act for lawyers." *Farrar*, 506 U.S. at 122, 113 S.Ct. at 578 (quoting *Riverside v. Rivera*, 477 U.S. 561, 588, 106 S.Ct. 2686, 2701 (1986) (Rehnquist, J., dissenting)). A fee award is only warranted when the plaintiff obtains actual relief on the merits that affects defendants' behavior towards plaintiff. *Farrar*, 506 U.S. at 116, 113 S.Ct. at 576 (quoting *Texas State Teachers Assn. v. Garland Independent School Dist.* ("*Garland*"), 489 U.S. 782, 792, 109 S. Ct. 1486, 1493 (1989) and *Hewitt v. Helms*, 482 U.S. 755, 761, 107 S.Ct. 2672, 2676 (1987)) (cleaned up). No fee should be awarded when "special circumstances would render [the] award unjust." *Farrar*, 506

9

U.S. at 118, 113 S.Ct. at 576 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937 (1983) (cleaned up)).

### A. The Limited Relief Granted Did Not Materially Alter the Parties' Relationship and Did Not Directly Benefit The Coalition.

To qualify for attorney's fees under § 1988, the plaintiff must be a "prevailing party." *Farrar*, 506 U.S. at 109, 113 S.Ct. at 572. Whether one is a "prevailing party" must be resolved before the "propriety of … [the] fee award" can be determined. *King v. Illinois Bd. of Elections*, 410 F.3d 404, 414 (7th Cir. 2005) (quoting *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 865 (7th Cir. 2001)). "A plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar*, 506 U.S. at 111-12, 113 S.Ct. at 573. *See also King*, 410 F.3d at 414 ("[J]udgment 'will constitute relief, for purposes of § 1988, if, and only if, it affects the behavior of the defendant towards the plaintiff.").

The City concedes that a permanent injunction is "actual relief" that may confer prevailing party status, *see Lefemine v. Wideman*, 568 U.S. 1, 133 S.Ct. 9 (2012), but denies that the result here "materially alter[ed]" the parties' legal relationship or "directly benefit[ted]" the Coalition. The portion of the order enjoining the City from denying parade applications did not materially alter the parties' relationship or directly benefit the Coalition because the City confirmed the Coalition's registration for their preferred time-slot on the Official Parade Route (i.e. the route upheld by the Court as consistent with the First Amendment) on July 1, 2024. (Muche Decl., ¶ 4).

Plaintiff may assert that the injunction benefitted the Coalition by removing the threat of revocation, but this argument is specious. The Coalition never faced any real threat of revocation because the Coalition consistently maintained that they would not use the Official Parade Route. Moreover, at all times the City consistently affirmed that the Coalition would receive its preferred

registration time slot – which it did. The Coalition did not reply to their Official Parade Route registration confirmation, moved forward with plans to follow a separate route, and actually did follow an alternative route on the first day of the RNC without impeding traffic. (Muche Decl., ¶¶ 4-9).

The Coalition's public statements also undercut any inference that the Coalition acted with a public purpose in mind. *C.f. Capps v. Drake*, 894 F.3d 802, 806 (7th Cir. 2018) (plaintiff testified obtaining a verdict was more important than accepting settlement without an acknowledgement of responsibility). Even if the ACLU, separate and apart from their client, claims a stake in vindicating public rights against government overreach it cannot be a "prevailing party" for purposes of fees pursuant to § 1988 because it was not involved as a party. *C.f. American Civil Liberties Union of Colorado v. City and County of Denver*, 569 F. Supp. 2d 1142, 1162 (D. Colo. 2008) (ACLU was directly involved as a party).

### B. Plaintiff Aimed High and Fell Short Achieving a Technical Victory Only.

"An enforceable judgment alone is not always enough: … a technical victory may be so insignificant as to be insufficient to support an award of attorney's fees." *Farrar*, 506 U.S. at 117, 113 S.Ct. at 576 (citing *Garland*, 489 U.S. 792, 109 S.Ct. at 1493) (quotations omitted). "When the plaintiff's success is purely technical or *de minimis*, no fees can be awarded." *Farrar*, 506 U.S. at 117, 113 S.Ct. at 576. Such a plaintiff either "has failed to achieve victory at all, or has obtained only a Pyrrhic victory for which the reasonable fee is zero." *Id*. In denying a fee award in *Farrar*, the Court observed: "[plaintiff] may have won a point, but the game, set, and match all went to the defendants." *Id*. at 121, 113 S.Ct. at 578.

The Seventh Circuit has not confined the logic of *Farrar* to cases in which plaintiff received nominal damages only. *Aponte v. City of Chicago*, 728 F.3d 724, 728 (7th Cir. 2013)

11

("Whether we call an award nominal, technical or de minimis, no specific dollar amount can be assigned to these kinds of trifling awards. Their meaning is contextual and will vary on a case-by-case basis."); *see also Capps v. Drake*, 894 F.3d 802, 806 (7th Cir. 2018) (citing *Aponte* with approval); *Robinson v. Perales*, 894 F.3d 818, 835 (7th Cir. 2018) (affirming denial of fee award where circumstances suggested "a mere personal victory without any accompanying public benefit."). Instead, *Farrar* applies when plaintiff "was aiming high and fell short, [and] in the process inflict[ed] heavy costs on [its] opponent and wast[ed] the time of the court." *Aponte*, 728 F.3d at 728 (quoting *Hyde v. Small*, 123 F.3d 583, 585 (7th Cir. 1997)). Courts must consider "the entire litigation history, including the number of victorious versus unsuccessful claims, the [relief] sought versus recovered, time expended by the parties, and judicial resources." *Id*.

A reasonable fee for such "trifling" victories must account for: (1) the difference between the relief granted and sought, (2) the significance of the issue on which plaintiff prevailed relative to the issues litigated, and (3) whether the case accomplished a public goal. *Id.* at 727 (citing *Farrar*, 506 U.S. at 117, 113 S.Ct. at 566). Of these three factors, comparing the relief granted to that sought is most important. *Aponte*, 728 F.3d at 731.

The significance prong asks to what extent the plaintiff succeeded on his theory of liability. *Maul v. Constan*, 23 F.3d 143, 145 (7th Cir. 1994). Even if the Coalition achieved some success by obtaining an injunction, it was insignificant in comparison to the relief sought. The Coalition sought an order requiring the City to allow its demonstration on its terms (i.e. along its preferred route), and collaterally attacked the Special Event Ordinance arguing it was unconstitutional – hence, unenforceable. (ECF No. 46, p. 13). If the ordinance had been held completely unenforceable the City could not have enforced restrictions on the Coalition's plans –but the Court enjoined only Section 9a-2. (ECF No. 47 and 49). Functionally, the injunction did not

12

meaningfully advance the Coalition's litigation objective (i.e. to march its own route). In short, "the game, set, and match all went to the defendants." *Farrar*, 506 U.S. at 121, 113 S.Ct. at 578.

Plaintiff's original complaint, motion for preliminary injunction, and amended complaint did not refer to Section 9a-2 or its contents. (ECF No. 46, p. 28, n. 4). The Coalition addressed the commissioner's authority to deny or revoke permits for the first time in their reply brief. (*Id*.). In the context of the entire litigation, the relief granted was not a significant victory.

The "public goal" prong asks whether the plaintiff's primary purpose was to remedy a private injury, or to establish general public rights. *Maul v. Constan*, 23 F.3d 143, 146 (7th Cir. 1994). The nature of plaintiff's claims and the relief sought may evince the plaintiff's primary purpose. *Id*. Plaintiff's testimony or statements may show a public or private purpose. *Compare Capps v. Drake*, 894 F.3d 802, 806 (7th Cir. 2018) (plaintiff testified obtaining a judgment was more important than settling with no admission of liability), *with Thorncreek Apartments III, LLC* (*Thorncreek III*) *v. Mick*, 886 F.3d 626, 639 (7th Cir. 2018) (finding litigation's public purpose "minimal."). But, the public purpose prong is "not satisfied simply because [the] plaintiff successfully establishes that his constitutional rights have been violated. *Maul*, 23 F.3d at 146. *See also Thorncreek III*, 886 F.3d at 639 ("Though the vindication of constitutional rights is always important, 'attorney's fees are appropriate … only when the plaintiff's victory entails something more than a determination that a constitutional guarantee was infringed.'") (cleaned up).

Even if granting the injunction had a public effect, the record does not support the conclusion that the Coalition's objective was to vindicate public rights. At oral argument Plaintiff's counsel admitted that the Coalition did not know any individuals or groups that declined to apply because of Section 9a-2. Plaintiff's counsel also distinguished the Coalition from the public generally, asserting that only applicants who had sought a permit for more than a year (like the

13

Coalition) were similarly situated. Moreover, the Coalition's own public statements focused entirely on the it's private plans: to start at Red Arrow park, to demonstrate "within sight and sound," and to coordinate programming amongst its members and exclude competing viewpoints. And after the judgment issued, the Coalition referred to it as a "very weak win"— not an important vindication of public rights – while announcing new plans separate from the Official Parade route.[17]

Trial courts have discretion to reduce fee awards when court resources or defense costs were needlessly exhausted to achieve nominal success. *Aponte*, 728 F.3d at 729 (citing *Hyde v. Small*, 123 F.3d 583 (7th Cir. 1997)). City staff maintained open lines of communication with the Coalition before suit was filed, sought to mediate in good faith, and continued to work with the Coalition to facilitate its planned demonstration even after judgment was obtained. On the other hand, the ACLU declined to participate in further discussions.

Although the parties recognized that time was of the essence at the outset (i.e. because the RNC would be held on July 15-18 regardless), Plaintiff amended its complaint, named new defendants, and raised new arguments after the City filed its responsive brief. (*See e.g.* ECF Nos. 33-34). The Court held a lengthy colloquy with the parties at oral argument simply to clarify the live issues, parties, and relief sought. (ECF No. 46, p. 13). As noted by the Court, the arguments relative to Section 9a-2 were underdeveloped but the City did not raise procedural objections at oral arguments in order to facilitate a timely decision on the merits. (ECF No. 46, p. 28, n. 4).

In light of the minimal success achieved, the insignificance of the relief granted to the litigation overall, and Plaintiff's lack of public focus, as well as the heavy costs imposed on

---

[17] *See* https://www.jsonline.com/story/news/politics/2024/07/09/milwaukee-protest-group-announces-rnc-march-route-drops-aclu-lawsuit/74339935007/.

14

opposing counsel and the Court, the "reasonable fee is zero." *Farrar*, 506 U.S. at 117, 113 S.Ct. at 576.

**C. Plaintiff's Proposed Fee Award is Not Reasonable.**

"Section 1988 … was 'never intended to produce windfalls for parties.'" *Fox v. Vice*, 563 U.S. 826, 837 (2011) (citing *Farrar*, 506 U.S. at 115, 113 S.Ct. 566). The statute authorizes awarding "a reasonable attorney's fee" only. 42 U.S.C. § 1988(b). Even if some fee award is appropriate, a "reasonable" fee accounts for the difference between the relief sought and achieved, and its significance relative to the litigation overall. *Aponte*, 728 F.3d at 727 (citing *Hyde*, 123 F.3d at 585; *Simpson v. Sheahan*, 104 F.3d 998, 1001 (7th Cir. 1997); and *Maul v. Constan*, 23 F.3d 143, 145-47 (7th Cir. 1994)).

The reasonableness of a fee award is "fundamentally determined by the 'degree of the plaintiff's overall success." *Thorncreek Apartments III, LLC* ("*Thorncreek III*") *v. Mick*, 886 F.3d 626, 638 (7th Cir. 2018) (cleaned up). In many cases, a reasonable fee is calculated by the lodestar method. *Id*. But "[i]f a court decides that the victory is minimal, it should not calculate the traditional loadstar." *Aponte*, 728 F.3d at 727 (citing *Farrar*, 506 U.S. at 117, 113 S.Ct. 566). "It is enough for a court to explain why the victory is *de minimis* and announce a sensible decision to award low fees or no fees at all." *Farrar,* 506 U.S. at 118, 113 S.Ct. 566 (cleaned up).

Plaintiff's brief asserts that the lodestar calculation totals $68,800. (ECF No. 53, p. 8). The brief correctly states that plaintiff's counsel is not entitled to be paid for "hours that are excessive, redundant, or otherwise unnecessary." (ECF No. 53, p. 9). For this reason, Plaintiff's counsel has subtracted 52.8 hours from its request. (*See generally* ECF No. 53, p. 8). However, the following entries were <u>not excluded:</u>

| Date | Staff | Activity | Time | Fee |
|---|---|---|---|---|
| 6/12/24 | Muth | Prepare amendments to complaint | 1 | $450.00 |

| | | | | |
|---|---|---|---|---|
| 6/13/24 | Muth | Further revise amended complaint | 0.5 | $225.00 |
| 6/14/24 | Muth | Prep for and participate in team call to discuss pleading development | 0.8 | $360.00 |
| 6/15/24 | Muth | Review and provide comment on reply brief, revise amended complaint | 1.7 | $765.00 |
| 6/26/24 | Cox | Continue research and drafting Plaintiff's reply brief, correspond with client regarding case; begin draft of First Amended Complaint | 14.5 | $6,162.50 |
| 6/27/24 | Cox | Continue research and drafting of Amended Complaint and Reply Brief; coordinate with case team on status of work; review and revise drafts; prepare exhibits, coordinate with case team on filing of pleadings | 14.8 | $6,290.00 |
| | | | **Total:** | $14,252.50 |

Plaintiff's amended complaint did not raise new theories or arguments against the City, or even the grounds upon which relief was granted, and as such, this work was unnecessary to the relief achieved. (ECF No. 33). While some of the hours claimed plausibly include time spent on Plaintiff's reply brief and the amended complaint, plaintiff bears the burden to show the portion of these entries attributable to necessary tasks. Trial courts have broad discretion to disallow vague, unjustified or insufficiently documented hours. *Montanez v. Simon*, 755 F.3d 547, 555-56 (7th Cir. 2014) (deducting improperly or inadequately recorded time).

Plaintiff's request also includes other questionable hours. Plaintiff's counsel claims 26.6 hours related to preparing for mediation, attending, and debriefing at a total cost of $7,936.50. This time was clearly unrelated to the Coalition's successful claims because Section 9a-2 was not even raised until Plaintiff's reply brief. (ECF No. 34). If the Court were inclined to calculate the lodestar amount, it should arrive at a total of $45,811.00 after necessary deductions (i.e. $68,800 minus $14,252.50, minus $7,936.50).

This initial calculation is only a "starting point," *see Estate of Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009)), when "a plaintiff has achieved only partial or limited success[.]" *Thorncreek III*, 886 F.3d at 638. The trial court is best positioned to assess whether the result "is a spectacular success, a dismal failure, or something in between[,]" *see Montanez v. Simon*, 755

F.3d 547, 557 (7th Cir. 2014), and retains "broad discretion to determine the appropriate reduction" in light of the degree of success obtained. *Thorncreek III*, 886 F.3d at 639.

Plaintiff's motion posits that its lodestar (e.g. $68,800) should be reduced by one-third. (ECF No. 53, p. 10-11). At first blush, this may appear sensible because the Coalition identified three claims for relief at oral argument succeeding in one only – but Plaintiff's math is wrong. In the first place, if the Court were inclined to reduce the award in direct proportion to the number of successful claims the lodestar should be reduced by <u>two-thirds</u>. This calculates to $22,933.33. But if, as the City asserts, the lodestar amount is only $46,611.00 taking into account additional necessary deductions, then one-third of that amount equals $15,537.17.

Furthermore, close consideration of the entire litigation reveals that the Coalition's first claim, i.e. an order requiring the City to allow the Coalition to demonstrate on its terms, predominated over the others. The Coalition's second and third claims were merely instrumental to its primary objective: preventing the City from interfering with its demonstration plans. The Coalition's conduct – both before the ruling and after – strongly supports this conclusion.

The Coalition's primary objective was wholly unsuccessful, and treating the suit as one-third successful overall ignores all of the surrounding context. Even a cursory review of the pleadings, briefs, and decision following oral argument shows that the vast majority of time and efforts were devoted to developing and advancing arguments in support of the Coalition's unsuccessful claims. If the Court calculates a lodestar, Defendants suggest that reducing the award to 5-10% of the total claimed, minus necessary exclusions, would be more appropriate.

**D. Special Circumstances Warrant No or Low Fees.**

Finally, Plaintiff's brief asserts that "no special circumstances exist in this case." (ECF No. 53, p. 7). Defendants cannot agree. The City established open lines of communication with the Coalition prior to suit, sought mediation in good faith including ensuring the attendance of non-

17

parties to facilitate meaningful discussion, and continued to work with the Coalition even after the Court upheld the majority of the ordinance.

To be sure, the Coalition did not receive everything it wanted before suit was filed: it wanted the parade route to be made public earlier, wanted speaker's slots to be assigned to facilitate its plans to present coordinated counter-programming to the RNC, objected to some prohibited items, and wanted others (i.e. guns) to be prohibited. (ECF No. 29, ¶¶ 17-19). Still, Plaintiff's complaint was ill-suited to resolve these issues – and did not.

The City explained that its plans would be publicly announced after the Secret Service finalized its security plan. That press conference ultimately coincided with the due date for Defendants' reply brief, but the existence of this litigation did not effect that timing. The Coalition never raised any claim relative to speaker's slots, and its demand that the City prohibit guns in contravention of state law was frivolous as the Court noted at oral argument.

Plaintiff's brief acknowledges that this suit involved "rapidly evolving facts," but sidesteps its own hand in creating that situation. (ECF No. 53, p. 9). City staff advised that the route would be released 3-5 weeks before the event, in conjunction with the Secret Service's public announcement. Filing suit in early June did not cause it to be released any sooner – but it did necessitate litigating upon a changing landscape.

Nor did the City even receive the benefit of final judgment in this matter. Following the Court's ruling, the Coalition publicly announced plans that directly conflicted with the Official Parade Route despite having ample opportunity to review City plans in the course of litigation. In response, City officials devoted additional time, effort, and resources to direct negotiation with the Coalition after Plaintiff's counsel washed their hands of the situation. The City made "extensive efforts to balance [the Coalition's] right to express themselves against the legitimate security and

18

Case 2:24-cv-00704-BHL   Filed 08/23/24   Page 18 of 19   Document 56

other governmental interests," not only prior to judgment but also after. (ECF No. 46, p. 34). Under the circumstances, no attorney's fee award is warranted.

## CONCLUSION

WHEREFORE, for the reasons stated herein, the City requests that the Court deny Plaintiff's request for attorney's fees, or award substantially lower fees than requested.

Dated and signed at Milwaukee, Wisconsin this 23rd day of August, 2024.

EVAN C. GOYKE
City Attorney

ADDRESS:
800 City Hall
200 E. Wells Street
Milwaukee, WI 53202
Tel: (414) 286-2601
Fax: (414) 286-8550

_____
CLINT B. MUCHE
Assistant City Attorney
State Bar No. 1131629
Email: cmuche@milwaukee.gov
JENNIFER L. WILIAMS
Assistant City Attorney
State Bar No. 1058087
Email: jewill@milwaukee.gov
JULIE P. WILSON
Deputy City Attorney
State Bar No. 1034792
Email: jwilson@milwaukee.gov
*Attorneys for Defendants*

1081-2024-988/292839