UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

COALITION TO MARCH ON THE RNC,

                    Plaintiff,                                        Case No. 24-cv-0704-bhl

        v.

CITY OF MILWAUKEE, et al,

                    Defendants.

## ORDER DENYING PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

        In July 2024, for the second election cycle in a row, the City of Milwaukee played host to the presidential nominating convention for one of the country's main political parties. In the days leading up to the convention, Plaintiff Coalition to March on the RNC (the Coalition), an unincorporated association of more than seventy organizations formed to conduct a protest parade at the convention, filed this lawsuit for injunctive relief against Defendants, the City of Milwaukee and its Mayor, Cavalier Johnson, and Commissioner of Public Works, Jerrell Krushcke.[1] The Coalition's initial filings did not clearly define its claims or the specific relief it was seeking, but, after being pressed by the Court, the Coalition ultimately identified three forms of requested relief. First, it asked the Court to order Defendants to permit the Coalition to march on its preferred route rather than the approved parade route adopted by the City and Secret Service. Second, the Coalition asked the Court to enjoin enforcement of a provision, Subsection 9a-2, in a Special Event Ordinance allowing Defendant Krushcke to deny or revoke parade applications on the basis of prior criminal convictions. Third, the Coalition requested an order enjoining the City from enforcing its prohibition on parades within the security footprint. On July 8, 2024, the Court issued a 35-page Decision and Order granting only the second request. The remaining requests, which had been the center of the dispute, were rejected.

---

[1] The Coalition later amended its complaint to add the then-Director of the United States Secret Service, Kimberly A. Cheatle, as a defendant. (ECF No. 33.) Because the Court did not grant the Coalition any relief against the Secret Service, the Coalition's motion is directed only at the other defendants, whom the Court will refer to collectively as the "City Defendants."

Based on its partial victory, the Coalition now seeks an award of $45,866.67 in attorney's fees and $450.75 in costs from the City Defendants pursuant to 42 U.S.C. §1988. (ECF No. 52.) The City Defendants oppose the motion, emphasizing that the Coalition achieved only a minimal victory and insisting that the circumstances, including the Coalition's conduct before, during, and after the litigation, warrant denial of fees. (ECF No. 56.) Given the circumstances of this case, the way it was litigated, and the minimal result achieved, the Court agrees that the Coalition's request for attorney's fees should be denied. Because the City Defendants have not objected to the Coalition's request for costs, however, that portion of the Coalition's motion will be granted, and the Clerk is directed to award costs in the amount requested.

## FACTUAL AND PROCEDURAL BACKGROUND

Milwaukee hosted the Republic National Committee's national nominating convention from July 15 through July 18, 2024. (ECF No. 26 ¶4.) On March 19, 2024, the City adopted a Special Event Ordinance relating to security for the convention and regulating any potential protests that might take place in connection with the event. (ECF No. 40 ¶56, ECF No. 7-6.) Subsection 9a-2 of the Special Event Ordinance granted Commissioner Krushcke the discretion to deny or revoke parade and speaker permits upon finding that an applicant, or any person represented by the applicant, had previously engaged in unlawful violent or destructive conduct in connection with a parade or public assembly. (ECF No. 7-6 at 4.) The Special Event Ordinance became effective April 6, 2024. (ECF No. 40 ¶57.)

In the late spring of 2024, the Coalition, an unincorporated association of individuals from a broad range of local, national, and grassroots community and labor organizations who came together to hold a protest parade at the convention, filed litigation in this Court, challenging the Special Event Ordinance. On June 5, 2024, before it had even filed a complaint, the Coalition filed a preliminary injunction motion challenging the Special Event Ordinance. (ECF No. 1.) In its motion, the Coalition asked the Court to order the City "to (1) issue a parade route within sight and sound of Fiserv Forum . . .; (2) eliminate all unjustified time, place, and manner restrictions on First Amendment activities within the security footprint; and (3) take immediate action to process the permit applications submitted to the City for First Amendment activity during the Convention." (ECF No. 2 at 9.)

The next day, the Coalition filed a corresponding complaint for declaratory and injunctive relief under 42 U.S.C. §1983. (ECF No. 7.) The Coalition claimed the City was violating its

members' First and Fourteenth Amendment rights by failing to grant the Coalition's application for a protest permit. (ECF No. 7 at 16.)  The Coalition also challenged the Special Event Ordinance as unconstitutional under the First and Fourteenth Amendments and claimed the ordinance violated the Coalition's due process rights. (*Id.* at 17–18.)  The complaint dedicated 13 paragraphs and more than 4 pages to describing the Special Event Ordinance but made no mention of Subsection 9a-2. (*Id.* at 7–11.)

On June 21, 2024, the City and the United States Secret Service announced a final security plan for the convention, including locations for two speaker podiums and an Official Parade Route for parade demonstrations. (ECF No. 40 ¶107; ECF No. 27 ¶12; ECF No. 27-3.)  That same day, the City announced standards for applying Subsection 9a-2, including a narrowing of its application to persons having been convicted of a crime involving violent or destructive conduct in connection with a parade or public assembly within the last seven years. (ECF No. 28 ¶12.)

At a June 24, 2024 status conference, the Court set a hearing on the Coalition's preliminary injunction motion. (ECF No. 32.)  The Court also directed the Coalition to address in its yet-to-be-filed reply brief both its standing to assert claims on behalf of its members and the specific relief it was requesting, updated to address the City's final security plan. (*Id.*)

On June 27, 2024, the Coalition filed an amended complaint that added Secret Service Director Kimberly A. Cheatle as a defendant. (ECF No. 33.)  The amended complaint made no reference to Subsection 9a-2. (*Id.*)  The Coalition also filed a reply brief in support of its preliminary injunction motion. (ECF No. 34.)  In response to the Court's directive at the status hearing, the reply brief identified four specific requests for relief, one of which generally referred to Subsection 9a-2, although not by its section number. (*Id.* at 2.)  On July 1, 2024, the Coalition filed a second request for injunctive relief, asking the Court to enter an injunction against the Secret Service in connection with the Coalition's challenge to the security requirements at the convention. (ECF No. 36.)  This request did not mention Subsection 9a-2. (*Id.*)

On July 3, 2024, the Court heard argument on the Coalition's preliminary injunction motion.  The Court noted the evolution of the Coalition's claims and its changing requests for relief.  It therefore pressed counsel to confirm the specific relief the Coalition was asking the Court to order.  In response, counsel identified three specific requests for injunctive relief:

- an order requiring the City and Secret Service to permit the Coalition to march on Monday, July 15, 2024, along the amended route proposed in its amended complaint and reply brief, (see ECF No. 33-4);

- an order enjoining the City and Commissioner of Public Works Jerrel Kruschke from denying or revoking parade applications on the basis of prior criminal convictions; and
- an order enjoining the City from enforcing its prohibition on parades within the security footprint on grounds that its definition of "parade" is unconstitutionally vague and overbroad.

(*Id.* at 13.) The substance of the argument focused almost exclusively on the first and third requests.

On July 8, 2024, the Court issued a Decision and Order granting the Coalition's motion for preliminary injunction but only in part. (ECF No. 46.) As to the Coalition's first request, the Court concluded that the City Defendants' decision to confine protest marches to the Official Parade Route was a content-neutral and reasonable time, place, and manner regulation that was narrowly tailored to serve significant governmental interests. (*Id.* at 15–26.) With respect to the second request, the Court concluded that the Coalition was likely to succeed on the merits of its challenge to Subsection 9a-2 as an impermissible prior restraint on protected speech. (*Id.* at 28–32.) Finally, the Court rejected the Coalition's third request, concluding that the Special Event Ordinance's definition of "parade" was not unconstitutionally vague or overbroad. (*Id.* at 32–34.) The parties declined to pursue additional proceedings, and the Court entered judgment on July 11, 2024, permanently enjoining the City Defendants from enforcing Subsection 9a-2 in an unconstitutional manner. (ECF No. 49.)

On July 9, 2024, the Coalition publicly announced plans to disregard the Court's ruling and march along a new route of its choosing. (ECF No. 56-1 ¶¶6–10.) Three days later, on July 12, 2024, City staff met with the Coalition and compromised on a new parade route for the Coalition. (*Id.* ¶¶13–17.) On July 15, 2024, the first day of the convention, the Coalition marched on the new route without incident. (*Id.* ¶14.)

## LEGAL STANDARD

For claims brought under Section 1983, the court has discretion to "allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. §1988(b). The Supreme Court has explained that a plaintiff "prevails" under Section 1988 "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Lefemine v. Wideman*, 568 U.S. 1, 4 (2012) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992)). In other words, a plaintiff

is a prevailing party if it "succeed[s] on any significant issue in litigation which achieves some of the benefit the [party] sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (citation and internal quotation marks omitted).

Whether to grant fees is discretionary, however, and, while prevailing civil rights plaintiffs are generally entitled to their attorney's fees "as a matter of course," *see King v. Ill. State Bd. of Elections*, 410 F.3d 404, 415 (7th Cir. 2005) (citations omitted), there are exceptions to this general rule. The Supreme Court has emphasized that in "some circumstances" a plaintiff who formally "prevails" under Section 1988 "should receive no attorney's fees at all." *Farrar*, 506 U.S. at 115. Accordingly, when the underlying case involves an award of only nominal damages or a purely "technical" or "insignificant" victory, the court should decline to award attorney's fees. *Id.* at 113–14. Attorney's fees should also not be awarded when "special circumstances would render such an award unjust." *Hensley*, 461 U.S. at 429 (citations omitted). The defendant bears the burden of establishing that special circumstances militate against an award of attorney's fees. *Crosby v. Bowling*, 683 F.2d 1068, 1072 (7th Cir. 1982).

## ANALYSIS

The Coalition argues that it is entitled to reasonable attorney's fees because it is a "prevailing party" within the meaning of Section 1988 and no special circumstances exist that would justify the denial of fees. (ECF No. 53 at 5–7.) The City Defendants object to any fee award, insisting the Coalition is not a prevailing party because the limited injunctive relief granted did not materially alter the parties' relationship or directly benefit the Coalition. (ECF No. 56 at 10–11.) They further argue that, even if the Coalition is a prevailing party, it achieved only a technical victory insufficient to justify an award for attorney's fees and that circumstances render an award unjust. (*Id.* at 11–15, 17–19.)

As an initial matter, the Court has little trouble concluding that the Coalition is a prevailing party for purposes of Section 1988. As the Coalition notes, it prevailed on its request that the Court enjoin the City Defendants from denying or revoking permit registrations pursuant to Subsection 9a-2 of the Special Event Ordinance and this relief had "real impact and was pursued in the public interest." (ECF No. 57 at 2.) Given the "generous formulation" of the standard, *see Farrar*, 506 U.S. at 109, the Coalition is a prevailing party here. The Supreme Court has noted that the entry of an injunction is usually sufficient to make the plaintiff a prevailing party. *See Lefemine*, 568 U.S. at 4 (citing *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988). While the Court rejected

the Coalition's other claims and requests for relief, this does not mean the Coalition is not a prevailing party. *See Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 787–88 (1989) (rejecting "central issue" test for determining prevailing party status). And, as the Supreme Court has cautioned, "the prevailing party inquiry does not turn on the magnitude of the relief obtained." *Farrar*, 506 U.S. at 113–14.

The City Defendants argue that although the Court enjoined enforcement of Subsection 9a-2, the final relief granted did not actually benefit the Coalition within the meaning of the prevailing party analysis. They emphasize that the Coalition maintained throughout the litigation that its members "would not use the Official Parade Route" regardless of the Court's ruling, and, in fact, insisted that they would not follow the prescribed route even after the Court ruled in the City's favor. (ECF No. 56 at 10–11.) This critique of the Coalition's conduct has merit, but it does not alter the fact that the Coalition prevailed on one of its requests for relief. The focus of the prevailing party inquiry is on the legal relationship between the parties when judgment is entered. *See Rhodes*, 488 U.S. at 4 (holding that plaintiffs did not prevail where change in prison policy could not have benefited them because one was released and the other dead when the district court entered declaratory judgment). When the Court enjoined the City Defendants from enforcing Subsection 9a-2, it precluded them from revoking the Coalition's parade registration on grounds that a Coalition participant had been previously convicted of a crime as described in the ordinance. This sufficiently changed the parties' legal relationship to convey prevailing party status on the Coalition.

Even though the Coalition is a prevailing party as to one of its claims, the Court has some discretion on whether to grant or deny the Coalition's fee request. The City Defendants urge the Court to exercise that discretion to deny fees, highlighting a number of facts that they contend weigh against awarding the Coalition its attorney's fees. First, they argue that the Coalition achieved at most a "purely technical" victory, for which "the reasonable fee is zero." (ECF No. 56 at 11–15 (quoting *Farrar*, 506 U.S. at 117).) Alternatively, they contend that special circumstances warrant the denial of anything more than minimal fees. (*Id.* at 17–19.) They emphasize their own good faith handling of the dispute, describing how they regularly communicated with the Coalition prior to suit, mediated in good faith, and continued to negotiate and compromise with the Coalition even after this Court rejected most of the Coalition's requested relief. (*Id.* at 17–18.) The City Defendants contrast their approach with the Coalition's actions,

as it continuously refused to cooperate in efforts to accommodate the many important interests in play, including public safety. They also highlight the Coalition's refusal to march on the Official Parade Route, a route the Court concluded passed constitutional muster, thereby disregarding the Court's ruling and denying all Defendants "the benefit of final judgment in this matter." (*Id.* at 18–19.)

The Court agrees that the circumstances render an award for attorney's fees to the Coalition inappropriate. The Court granted injunctive relief to the Coalition on just one of its requests and that request was the least litigated by the Coalition. The vast majority of the parties' briefing and oral argument was devoted to the Coalition's first and third requests for relief, and the Court ruled *against* the Coalition on both requests, applying relatively straightforward Supreme Court precedent. (ECF No. 46 at 14–27, 32–34.) As the Court explained in granting only a fraction of the relief requested:

> The record demonstrates Defendants' extensive efforts to balance the Coalition members' right to express themselves against the legitimate security and other governmental interests that Defendants have been charged with defending. The vast majority of the resulting security plan is a reasonable and valid time, place, and manner regulation on speech.

(ECF No. 46 at 34.) Thus, the Coalition prevailed on an issue that was of relatively minimal significance within the context of this lawsuit. The Coalition did not even mention Subsection 9a-2 in its initial or amended complaints or in its first several attempts to identify the injunctive relief it was seeking. When the Coalition finally raised this provision in its briefing and at oral argument, its presentation was largely perfunctory. The primary legal treatment of the issue came in the Coalition's reply brief, where it cited only two out-of-circuit decisions with little direct relevance to the facts of this case. (*See* ECF No. 34 at 22–24.) Ultimately, the Court—*not the Coalition*—identified *Collin v. Chicago Park District*, 460 F.2d 746 (7th Cir. 1972), the controlling Seventh Circuit precedent that confirmed Subsection 9a-2 was an unconstitutional prior restraint on speech. (*See* ECF No. 46 at 30.) The Coalition's minimal attention to the issue confirms the relatively minor nature of the relief granted, which weighs against a grant of attorney's fees. *See Farrar*, 506 U.S. at 114 ("The degree of the plaintiff's overall success goes to the reasonableness of a fee award." (cleaned up)).

It is also significant that the City Defendants do not appear to have even attempted to employ Subsection 9a-2 to deny or revoke a permit application, rendering the Coalition's victory

largely academic. The absence of any evidence that anyone ever attempted to enforce subsection 9a-2 weighs against an award of attorney's fees. *Compare Tex. State Tchrs. Ass'n*, 489 U.S. at 792 (unconstitutionally vague requirement of "minor significance" insufficient to confer prevailing party status where there was no evidence it had ever been applied), *with Lefemine*, 568 U.S. at 2–5 (grant of injunction warranted attorney's fees where police intended to unconstitutionally limit plaintiff's right to protest).

Finally, the context of the litigation and the way the Coalition handled the dispute also weigh heaving against making the City Defendants pay the Coalition's fees. The record confirms that the City Defendants consistently acted in good faith to minimize disputes while trying to respect the Coalition members' right to protest. Before, during, and even after this litigation concluded, the City Defendants regularly communicated with the Coalition regarding its permit applications, negotiated with the Coalition in good faith, and attempted to balance the First Amendment rights of the Coalition and other citizens with their duty to ensure the safety and security of all participants, protesters, and bystanders during the convention. Beginning in February 2024, an Assistant City Attorney was in regular contact with the Coalition's counsel concerning its parade application and other RNC-related issues. (ECF No. 40 ¶140.) Those regular communications continued throughout the period leading up to the convention and the Coalition filing this lawsuit. (*Id.* ¶¶143–53.) Defendants even forwarded the Coalition an advance copy of the draft Special Event Ordinance, almost a week before it was adopted by City Council. (*Id.* ¶141.) And they assured the Coalition that it would keep its place in line to receive its preferred parade time when permits were approved. (ECF No. 29 ¶16.) After the Coalition filed suit, the City Defendants willingly engaged in mediation, even providing the attendance of additional nonparties involved in security planning for the convention, including members of the Milwaukee Police Department and United States Secret Service. (ECF No. 14.) And, importantly, when the Court issued an injunction against the City Defendants prohibiting enforcement of Subsection 9a-2, they complied. The City Defendants should be applauded for their professionalism and their reasonable approach in trying to balance important competing interests.

The Coalition's conduct was less praiseworthy. Its filings throughout this litigation, as well as its counsel's statements at oral argument, were disorganized and procedurally questionable. The Coalition filed a preliminary injunction motion before it filed its complaint! Its claims and request for relief seemed to change with every filing and every hearing, demonstrating a failure to

clearly think through their claims and theories. Moreover, the substance of the Coalition's filings confirm that the primary purpose of this case was to obtain a court order allowing Coalition members to march on the Coalition's preferred parade route, one that would bring it within sight and sound of Fiserv Forum, irrespective of any legitimate security concerns raised by Defendants. On July 8, 2024, the Court denied that request, concluding that Defendants' decision to confine protest parades to the Official Parade Route was a content-neutral and reasonable time, place, and manner regulation that was narrowly tailored to serve significant governmental interests. (ECF No. 46 at 15–26.) Then, despite hailing the City Defendants and the Secret Service into court and forcing them to expend considerable public resources defending against the Coalition's claims, once it lost, the Coalition promptly announced it was refusing to abide by this Court's ruling. On the very next day after the Court's ruling, the Coalition held a press conference announcing that it would disregard the Court's order and march on an entirely new route, one never proposed during the pendency of this litigation. In response, the City Defendants again confirmed their willingness to engage in good faith and compromise with the Coalition, despite explicit confirmation from the Court that they were constitutionally permitted to confine the Coalition's parade to the Official Parade Route. Ultimately, the parties agreed on a compromise and the Coalition marched along an agreed-upon route distinct from the official parade route without incident. The Coalition's demonstrated disrespect for the process and the Court's ruling undercuts any request for fees. The "special circumstances" exception to Section 1988 is seldom used and "applicable only to unusual cases," *see Crosby*, 683 F.2d at 1072, but its application is warranted here. It would be unfair to order the City Defendants to pay any portion of attorney's fees incurred by the Coalition in pursuing litigation the result of which the Coalition itself refused to obey.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Coalition to March on the RNC's Motion for Attorney's Fees and Costs, ECF No. 52, is **DENIED in part** and **GRANTED in part**. The Coalition's request for an award of attorney's fees is **DENIED**. Its request for costs from the City Defendants in the amount of $450.75 is **GRANTED**.

Dated at Milwaukee, Wisconsin on February 11, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge